### STATE OF CONNECTICUT *v.* ROBERT CHAMBERS (SC 18490)

Rogers, C. J., and Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.

---

Argued March 23—officially released May 25, 2010

*Richard W. Callahan,* special public defender, for the appellant (defendant).

*Ronald G. Weller,* senior assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Patrick J. Griffin,* senior assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. In his appeal from the trial court's judgment of conviction,[1] the defendant, Robert Chambers, claims that the trial court deprived him of his constitutional

---

[1] The defendant, Robert Chambers, appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

rights to due process and a fair trial after his trial counsel had invoked rule 3.3 (a) (3) of the Rules of Professional Conduct on the basis of counsel's conclusion that the defendant intended to offer false testimony.[2] In advancing this claim, the defendant raises issues relating to the standard for determining whether counsel properly has invoked rule 3.3 (a) (3), the procedures required to determine whether that standard is met and the procedures to be followed at trial once that standard has been met.

The question of what a criminal defense attorney should do when confronted with client perjury at trial has been a subject of considerable debate because of the ethical and constitutional concerns it implicates. See footnotes 13, 15 and 19 of this opinion. It is without question that a defense attorney must furnish zealous advocacy and preserve client confidences, but, at the same time, fulfill his or her duty to the court. In addition, procedures that may be prescribed to address the problem of client perjury have the potential to deprive a defendant of his right to effective assistance of counsel and his rights to due process and a fair trial, which include his right to testify in his own defense. Despite the important issues implicated in this case, however, we cannot address them in any considered way because the state of the record and the specific facts of the present case circumscribe the scope of our review. For that reason, we also need not recite at any length the overwhelming evidence relating to the brutal assault and robbery of a fast-food deliveryman upon which the jury reasonably relied to convict the defendant of assault in the first degree in violation of General Stat-

---

[2] Rule 3.3 (a) of the Rules of Professional Conduct provides in relevant part: "A lawyer shall not knowingly . . . (3) [o]ffer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal."

utes § 53a-59 (a) (1), robbery in the first degree in violation of General Statutes §§ 53a-8 (a) and 53a-134 (a) (1), and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (1). On the basis of this record, therefore, we affirm the trial court's judgment.

The record discloses the following undisputed facts and procedural history, which must be set forth in some detail to explain the limits of our ability to address the issues raised on appeal. On February 8, 2006, Attorney Robert Berke was appointed as a special public defender to represent the defendant in connection with the aforementioned charges. Trial before a jury began on August 14, 2007, with *Hadden, J.*, presiding. On August 20, after the state had presented its case-in-chief, Berke made the following statement to alert the court to a potential ethical issue: "I'd just like to place the court on notice, I think that tomorrow I would likely . . . ask the court to allow my client to testify in the narrative. And the Rules of Professional Conduct require me to make that request. I'm not confident that conclusion has been reached by myself or my client that he will testify but in the event that he does I just want to tell the court I intend to do that." The state responded that, "if this scenario does take place . . . there can be no reference to the defendant's testimony in closing argument on behalf of counsel." The trial court decided to wait until the following day to address the issue, at which time another judge, *Alexander, J.*, presided over the matter.

After meeting with Berke and Patrick Griffin, a senior assistant state's attorney, in chambers, Judge Alexander held a hearing, at which the defendant also was present. At that hearing, Berke moved to withdraw as counsel, citing "ethical responsibilities that I have to the administration of justice and to the courts and system in pursuing certain facts that cannot be placed before the Judge

by me as a commissioner of the Superior Court." Berke noted that this issue applied only if the defendant took the stand to testify and he stated that "[t]here are other defense witnesses that these issues do not have any impact on." In the alternative, should the court deny his motion to withdraw, Berke asked that the defendant be permitted to testify in the narrative form, rather than the usual question and answer form. Berke confirmed that he was relying on rule 3.3 (a) (3) of the Rules of Professional Conduct, which provides that a "lawyer shall not knowingly . . . [o]ffer evidence that the law-yer knows to be false."[3] Berke declined to "[give] the court a lot of detail . . . [because he had] an obligation to [his] client not to do that." On the basis of Berke's representations, the court denied his request to with-draw, but granted his request to have the defendant testify in the narrative should he decide to testify.

Judge Alexander then conducted the following can-vass of the defendant on this issue:

"The Court: . . . All right. With respect to this, Mr. Chambers, I have to go over some things with you if you do choose to testify. Obviously, you have a right not to testify in a criminal trial and it's not held against you. Do you understand that, yes or no?

"[The Defendant]: Yes.

"The Court: With respect to this, the court in fact gives a particular instruction that tells juries . . . not to, in fact, use that against you. . . . So, basically, it becomes as in any criminal case, the state's responsibil-ity to show that you're guilty beyond a reasonable doubt. You understand that?

---

[3] Although Judge Alexander mistakenly referred to rule 3.4 of the Rules of Professional Conduct, and Berke mistakenly affirmed that he was relying on that rule, the parties agree that Berke actually was relying on rule 3.3 (a) (3).

"[The Defendant]: Yes.

"The Court: Okay. Now, if your lawyer, in fact, is not required to question you, do you understand that the jury is going to have a much different impression of your testimony?

"[The Defendant]: Yes.

"The Court: Okay. So, obviously, everyone else has been questioned, back and forth by the lawyers, all that's going to happen in this case is that he is going to say, tell the jury what happened, and you're just going to go. Okay?

"[The Defendant]: I understand.

"The Court: And you're going to be giving up any claim that this was ineffective counsel because the court is not allowing him to question you. Do you understand that?

"[The Defendant]: Yes.

"The Court: And you're making the decision over your right to remain silent. To, in fact, give up that right and go before the jury. Okay?

"[The Defendant]: Yes.

"The Court: Now, with respect to this, that also means that he is not going to be able to help you with the cross-examination, unless it is a—basically a rule of evidence, such that potentially is going to require . . . no answer. In other words, if Mr. Griffin brings up something that could be self-incrimination in another case, you would have the right to stand up and object. But, otherwise, if it has to do with the facts of this case, or with your credibility, or with your prior criminal history, there's going to be no lawyer representing you during that cross-examination. Do you understand that?

"[The Defendant]: Yes.

"The Court: Okay. And what I'm referring to, Mr. Berke, because I know you look quizzical, obviously, Mr. Griffin couldn't go into areas of unsolved crimes. So, that's what I'm suggesting. I'm not suggesting he would, but as his attorney you would obviously have, I think, that right and obligation to prevent [the defendant] from incrimination on other matters. But do you understand that once Mr. Griffin starts going, you're going to have to answer all of [the] questions?

"[The Defendant]: Yes.

"The Court: And you can't stop, and you're not going to have a lawyer to say 'objection.'

"[The Defendant]: I understand.

"The Court: And, so you're going to be in a much different position than any other witness.

"[The Defendant]: I understand.

\* \* \*

"The Court: . . . But the rule that will be followed, so you're clear . . . is the following: You take the stand. You take it at your own risk. You are not going to have this counsel represent you. You're just going to have to do a narrative with nobody stopping; you're just going to talk. If there's objectionable things that come out, the state's going to object; the court's going to stop you. The court will redirect you as to what areas you can talk about. You're going to be limited as to whether or not any objections are made on your behalf. You're going to be questioned about your testimony in your motion to suppress. You're going to be questioned about your statements, both written and oral. You're going to be questioned about your letters. It's not going to be limited to what you say. Do you understand all of that?

"[The Defendant]: Yes."

Berke then raised the question of how the defendant's testimony could be presented to the jury in closing argument. Berke proposed that, although he ethically could not discuss the defendant's testimony, the defendant should be allowed to present such argument on his own behalf. Judge Alexander decided that it was premature to rule definitively on this issue, noting that "that may be something actually Judge Hadden can rule on once the testimony is in . . . ." Nonetheless, Judge Alexander conducted the following extensive canvass of the defendant regarding closing argument:

"The Court: . . . Now, with respect to this, again, the court is going to save—because there is a jury waiting—for another day whether or not this [testimony] will be argued. But do you understand that there is the potential for the court to rule that the only thing that will be given is your testimony; that the court will instruct that the jury should consider all of the testimony; that your lawyer is under no obligation based on his ethical obligations to argue that to the jury. Do you understand that?

"[The Defendant]: Yeah.

"The Court: And if the court, in fact, rules that it's not going to be argued in your closing argument, then all you have done is put in facts, but there wouldn't have been an argument about those facts. Do you understand that?

"[The Defendant]: Yes.

"The Court: Okay. Now, if the court does decide to allow you to make a comment on that, do you understand, again, that you'd be very restricted on the comments? You'd be limited to exactly what you said, in essence. And you wouldn't be allowed to testify any further. Do you understand that?

"[The Defendant]: Not quite.

"The Court: Okay. Because if you go outside of what you said, outside of permissible argument about what the facts are that you said, then you're denying the state's right to cross-examine you, and the court's going to stop you.

"[The Defendant]: Okay.

"The Court: [A]nd you're going to be told that you can't argue that, and they're going to be told to disregard that. And, again, you know, that's something you have to weigh when the jury's watching you, what they think about a court stopping you in your tracks and saying you can't say that and the jury can't consider that. Do you see what I'm saying?

"So, do you understand that there is a lot of dangers, obviously, to you, that you will have given up certain rights to say that it shouldn't have happened that way if you voluntarily put yourself in that situation. Do you understand that?

"[The Defendant]: Yes.

"The Court: So, you can't claim it was an error later if you did it of your own free will—or you do this of your own free will. Do you understand that?

"[The Defendant]: Yes."

Finally, Judge Alexander conducted a general canvass on the defendant's decision to testify during which the defendant confirmed that he had had sufficient time to discuss this decision with Berke, that he had made the decision to testify "of [his] own free will," and that he understood that he had a right not to testify.

Following this proceeding, the case was returned to Judge Hadden for presentation of the defendant's case-in-chief. Berke called two witnesses, and then called the defendant to testify. Before the defendant began his testimony, the trial court gave a preliminary instruc-

tion to the jury explaining the narrative form of testimony and cautioning the jury not to treat the defendant's testimony differently merely because it was being presented in this form.[4] Following that instruction, Berke asked the defendant one question—"Could you tell this jury what happened on January 16, [2006] and after that?"—and the defendant responded in the narrative for a period of time approximating eight pages of transcription. During his testimony, the defendant blamed the robbery and assault on his two coconspirators, claiming that they had confessed to stealing a car and committing a robbery. The defendant claimed to have had no involvement in the incident, and further claimed that he had been "forced into giving [and] signing a statement [to the police]."

On cross-examination, the defendant admitted to committing perjury several times throughout the case, and even acknowledged that he had "perjured [himself]" during his trial testimony.[5] The defendant also

---

[4] Judge Hadden gave the jury the following instruction: "Ladies and gentlemen, you have observed the procedures that have been utilized as each witness took the stand. As you know, on each instance the attorneys have come forward to ask specific questions, they were asked one at a time. And the story basically is relayed to you through a series of questions and answers. In certain circumstances, the court may allow a narrative testimony, that is, that the witness is allowed to simply relate all the information that he or she feels is relevant to the case.

"Under the circumstances of this particular case and with this [defendant], I have directed that that would be the procedure that we would follow in this instance. All right. So rather than having a series of questions and responses from Attorney Berke, [the defendant] will be asked a general question and he will give a narrative response. And as I've indicated to you that is at the direction of the court.

"Now, because this procedure is a little different please do not try to speculate as to why it's different, do not draw any inferences whatsoever in regard to this procedure. This is a procedure that is allowed and it is allowed by my direction. So you should have no inference whatsoever in anyway about this testimony, about this defendant or anything else. This should not affect your deliberations in any way."

[5] Specifically, the defendant admitted to lying under oath, lying to the police, lying at the suppression hearing, and soliciting perjury by asking others to lie for him at trial. He also acknowledged that his "track record

acknowledged that, for the jury to acquit him, they "would have had to believe perjured testimony."[6]

Following the defendant's testimony, Berke rested for the defense. Berke then once again moved to withdraw as counsel, claiming that he would be restricted in his closing argument.[7] Ultimately, Judge Hadden denied Berke's motion to withdraw, but ruled that both the defendant, limited to his own testimony, and Berke, limited to the remainder of the evidence, could present closing argument. Specifically, Judge Hadden stated: "I understand the position of counsel is that the ethical code prohibits him from participating in the testimony of the defendant in that it is counsel's belief that such testimony was perjury. Let me also indicate that I do believe that it is inappropriate for counsel to then comment directly on the contents of the defendant's testimony, in light of those facts. However, to allow counsel to withdraw, I believe, at this stage of the proceedings, would be prejudicial to [the defendant]; also, it would be impossible to appoint any additional counsel to represent [the defendant] since that new counsel would obviously face exactly the same ethical problem that Attorney Berke faces. I do believe that Attorney Berke will have the opportunity to appropriately give a summation on all of the other aspects of this case and all of the other evidence that was presented. And in light of the circumstances, you now have time to prepare,

for telling the truth" to the police and the jury "leaves a little bit to be desired." The defendant contended, however, that he had perjured himself "based on the guidelines that [the state] set forth," but that, "[i]n [his] own eyes, [he didn't] feel as though [he had] lied."

[6] As we explain in further detail in part III of this opinion, during cross-examination and on redirect examination of the defendant, Berke either objected or responded to objections several times on behalf of the defendant.

[7] Berke apparently was referring to Judge Alexander's ruling on his earlier unsuccessful attempt to withdraw on the same grounds, in which Judge Alexander had stated that, Berke would not be able to comment on the specifics of the testimony of the defendant in closing argument, but could comment on the remainder of the evidence.

and you can so advise [the defendant] that if he wishes to . . . directly argue his testimony to the jury, I'll give him the opportunity to do that. I would expect counsel to explain to him what argument is. He will have every opportunity to present such argument as he feels is necessary. You, Attorney Berke, can make any comment regarding the rest of the case. The total argument by counsel and by [the defendant], if he chooses to participate, will be one hour."

Before closing arguments were to commence, Judge Hadden asked whether the defendant intended to participate in final arguments. Berke explained that he and the defendant would make that decision after the state's closing argument. At that point, the court reminded the defendant of his right to "participate in the argument," but noted that, "should [he] choose to address the jury, it is . . . not the time for additional testimony" and that he must "simply summarize . . . the evidence." After the state concluded its closing argument, the following discussion occurred relating to the decision of the defense to waive closing argument:

"Mr. Berke: Your Honor, on behalf of [the defendant] I'm waiving my right to closing argument.

"The Court: All right. Mr. Chambers, do you understand that your attorney has waived the right to final argument?

"The Defendant: Yes.

"The Court: Do you agree with that decision?

"The Defendant: Yes, I do."

Thereafter, the trial court charged the jury. The next day, the jury returned a guilty verdict on all counts. The trial court thereafter rendered judgment and sen-

tenced the defendant in accordance with the verdict.[8] This appeal followed. See footnote 1 of this opinion.

On appeal, the defendant claims that he was denied his rights to due process and a fair trial for several reasons. First, he claims that he improperly was excluded from proceedings that were critical to the trial court's acceptance of Berke's request to have the defendant testify in the narrative upon Berke's invocation of rule 3.3 of the Rules of Professional Conduct, specifically, the discussion in chambers with Judge Alexander. Second, he claims that, prior to accepting that invocation of rule 3.3, the trial court improperly failed to conduct an evidentiary hearing on the record to determine that Berke's "knowledge" that the defendant intended to offer false testimony satisfied the requirements of that rule. Lastly, the defendant claims that, even accepting as true that Berke had met the requirements of rule 3.3 (a) (3), the trial court's rulings on the procedures to be employed in this case—that the defendant had to testify in a narrative form, that Berke could not make all pertinent objections on the defendant's behalf during the state's cross-examination and that Berke's closing arguments had to be circumscribed—were constitutionally excessive. Because neither the defendant nor Berke raised the issue of the defendant's alleged absence from critical proceedings or any issue regarding what procedure is due before a trial court may accept counsel's invocation of rule 3.3 and restrict a defendant's right to testify, the defendant seeks review of those claims under both *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989),[9] and this court's

---

[8] The trial court sentenced the defendant to a term of twenty years on the assault charge, a term of fifteen years on the robbery charge, and ten years on the conspiracy charge, each count to be served consecutively, for a total effective sentence of forty-five years imprisonment.

[9] "Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error only if all of the following conditions are satisfied: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right;

supervisory authority. We conclude that the defendant's first claim is not supported by an adequate record, that his second claim fails on the merits under the particular circumstances of the present case and that his third claim fails in part because it is not supported by the facts in the record and in part because it was waived.

I

We begin with the defendant's claim that he improperly was excluded from the in-chambers meeting with Judge Alexander that preceded the hearing at which the judge canvassed the defendant and rendered her rulings regarding the ethical dilemma raised by Berke's conclusion that the defendant intended to commit perjury if he testified. The defendant contends that this meeting was a critical stage of his prosecution at which he was entitled to be present. Although the state addresses the merits of the claim, it first argues that this claim is not reviewable because the defendant has failed to provide this court with an adequate record. We agree with the state that the record is inadequate for us to review the claim on direct appeal.

It is well settled that a criminal defendant has a constitutional right to be present at all critical stages of his or her prosecution. *Rushen* v. *Spain*, 464 U.S. 114, 117, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983) ("the right to personal presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant"). Indeed, "[a] defendant's right to be present . . . is scarcely less important to the

(3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Citations omitted; internal quotation marks omitted.) *State* v. *Cutler*, 293 Conn. 303, 325, 977 A.2d 209 (2009).

accused than the right of trial itself." (Internal quotation marks omitted.) *State* v. *Simino*, 200 Conn. 113, 127, 509 A.2d 1039 (1986). "Although the constitutional right to be present is rooted to a large extent in the confrontation clause of the sixth amendment, courts have recognized that this right is protected by the due process clause in situations when the defendant is not actually confronting witnesses or evidence against him. *Snyder* v. *Massachusetts*, 291 U.S. 97, 105–106, 108, 54 S. Ct. 330, 78 L. Ed. 674 (1934); see *State* v. *Jarzbek*, 204 Conn. 683, 691–92, 529 A.2d 1245 (1987) (recognizing that right to be present similarly is guaranteed by article first, § 8, of our state constitution), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988). In judging whether a particular segment of a criminal proceeding constitutes a critical stage of a defendant's prosecution, courts have evaluated the extent to which a fair and just hearing would be thwarted by [the defendant's] absence or whether his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge. *Kentucky* v. *Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987)." (Internal quotation marks omitted.) *State* v. *Lopez*, 271 Conn. 724, 732, 859 A.2d 898 (2004).

The defendant claims that there were discussions conducted in chambers regarding the ethical dilemma raised by Berke and that this meeting constituted a critical stage of his prosecution. As we recently have acknowledged, although "an in camera inquiry regarding a potential conflict of interest may constitute a critical stage of a prosecution . . . it does not follow that all in-chambers discussions constitute a critical stage of the prosecution. . . . Applying the test set forth in *Lopez* to determine whether a particular in camera proceeding qualifies as a critical stage of the prosecution is a necessarily fact intensive inquiry. Thus, it is imperative that the record reveal the scope of

discussion that transpired." (Citations omitted; internal quotation marks omitted.) *State* v. *Bonner*, 290 Conn. 468, 492, 964 A.2d 73 (2009).

In the present case, the only evidence *in the record* regarding what transpired in chambers consists of two passing references by Judge Alexander indicating merely that there had been such a meeting.[10] Therefore, as in *Bonner*, we find that the record is deficient in this regard. "[A]part from a few oblique references, the record does not reveal, in any useful detail, the scope of the discussions that transpired. Thus, we are left to speculate as to whether the [in camera] conversation[s] consisted of the court and counsel conducting an extensive discussion as to [the defendant's intent to commit perjury] at one end of the spectrum or, at the opposite end, a brief comment to the court that there was a matter that needed to be placed on the record, or . . . dialogue that fell somewhere in between. As a result, we cannot determine the extent to which a fair and just hearing would have been thwarted by the defendant's absence or whether his presence has a reasonably substantial relation to the fullness of his opportunity to defend against the criminal charges." (Internal quotation marks omitted.) Id., 492–93; see also *State* v. *Brunetti*, 279 Conn. 39, 63, 901 A.2d 1 (2006) ("Our role is not to guess at possibilities . . . but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal

---

[10] When the hearing was held before Judge Alexander, at which the defendant was present, she stated: "[W]ith respect to this, this matter is a nontrial matter. We are now, I believe, in the defense case, according to counsel in chambers. Mr. Berke, what did you want to put on the record?" Berke then made the representations set forth in the text of this opinion. Later, after canvassing the defendant as to whether he understood the limitations that would be placed on Berke while the defendant testified in the narrative, Judge Alexander stated: "All right. With respect to [the limitations on Berke], do you want to be heard any further? Have I missed anything as part of our chamber's discussion?"

conclusions furnished by the trial court . . . any deci-sion made by us respecting [the defendant's claims] would be entirely speculative." [Internal quotation marks omitted.]), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007).

Pursuant to Practice Book § 61-10,[11] it is the appellant, the defendant in the present case, who bears the burden of providing an adequate record for review on appeal. His counsel did not request a hearing on this matter in the trial court to create a record for appellate review. Nor did he move for an articulation or rectification of the record. See *Bingham* v. *Dept. of Public Works*, 286 Conn. 698, 704 n.5, 945 A.2d 927 (2008) (motion for articulation or rectification is proper "where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter" [internal quotation marks omitted]). We will not speculate about the constitutional significance of the in-chambers dis-cussions or reverse the defendant's conviction on the basis of that speculation. Accordingly, irrespective of whether review is sought under *Golding* or pursuant to our supervisory authority, we conclude that the record is inadequate for us to review the defendant's constitutional challenge to his absence from that pro-ceeding.

## II

The defendant next claims that, prior to accepting Berke's invocation of rule 3.3 (a) (3), Judge Alexander improperly failed to conduct any inquiry on the record to determine whether Berke's "knowledge" of the defendant's intent to commit perjury met the require-

---

[11] Practice Book § 61-10 provides in relevant part: "It is the responsibility of the appellant to provide an adequate record for review. The appellant shall determine whether the entire trial court record is complete, correct and otherwise perfected for presentation on appeal. . . ."

ments of that rule. See footnote 2 of this opinion. Essentially, the defendant asks this court to adopt a standard for trial courts to apply when determining whether an attorney *knows* that his client intends to offer false evidence. The defendant contends that, although other courts have applied various standards, this court should adopt a "middle ground" standard, under which the trial court must find that the attorney has clear and convincing evidence that his client is going to testify falsely. He further contends that Judge Alexander could not deem this standard satisfied upon Berke's "bare assertion" of rule 3.3 (a) (3), but, rather, was required to conduct an evidentiary hearing to determine whether Berke's knowledge met the clear and convincing standard before limiting the defendant's testimony to the narrative form.[12]

The state responds that it is unnecessary for this court to adopt a standard because our Rules of Professional

---

[12] Although the narrative form of testimony as a response to this ethical dilemma initially was adopted by the American Bar Association in 1971; A.B.A., Standards for Criminal Justice (Approved Draft 1971), standard 4-7.7; the American Bar Association later rejected this approach in favor of one that allows the attorney to examine a client as to truthful testimony, and the narrative approach has been subject to other criticism. See, e.g., *United States* v. *Long*, 857 F.2d 436, 446 n.7 (8th Cir. 1988). Nonetheless, "the narrative [approach] continues to be a commonly accepted method of dealing with client perjury." *Shockley* v. *State*, 565 A.2d 1373, 1380 (Del. 1989); see *People* v. *Johnson*, 62 Cal. App. 4th 608, 629, 72 Cal. Rptr. 2d 805 (1998) ("None of the approaches to a client's stated intention to commit perjury is perfect. Of the various approaches, we believe the narrative approach represents the best accommodation of the competing interests of the defendant's right to testify and the attorney's obligation not to participate in the presentation of perjured testimony since it allows the defendant to tell the jury, in his own words, his version of what occurred, a right which has been described as fundamental, and allows the attorney to play a passive role."); see, e.g., *Butler* v. *United States*, 414 A.2d 844, 850 (D.C. 1980); *Sanborn* v. *State*, 474 So. 2d 309, 313 and n.3 (Fla. App. 1985); *People* v. *Bartee*, 208 Ill. App. 3d 105, 108, 566 N.E.2d 855, appeal denied, 139 Ill. 2d 598, 575 N.E.2d 917, cert. denied, 502 U.S. 1014, 112 S. Ct. 661, 116 L. Ed. 2d 752 (1991); *Brown* v. *Commonwealth*, 226 S.W.3d 74, 84 (Ky. 2007). This court previously has not weighed in on this issue, and we need not do so in the present case.

Conduct already provide for one—namely, actual knowledge. The state further maintains that it is unnecessary for this court to evaluate whether Berke's invocation of rule 3.3 (a) (3) was a sufficient basis to establish actual knowledge that the defendant intended to testify falsely because the defendant not only failed to raise this claim at trial or to challenge Berke's representations that the defendant intended to perjure himself, but also later acknowledged that he had committed perjury during his trial testimony. Therefore, the state asserts that the defendant cannot challenge that the knowledge requirement of rule 3.3 (a) (3) was satisfied. We agree in part with the state.

We agree with the state that our Rules of Professional Conduct require "actual knowledge" and not a mere "reasonable belief" by the attorney that his client intends to commit perjury.[13] See Rules of Professional

---

[13] Courts in other jurisdictions have set forth, and commentators have suggested, a myriad of standards for determining when an attorney "knows" his or her client intends to testify falsely. These standards include: "good cause to believe," "knowledge beyond a reasonable doubt," "a firm factual basis," and "a good faith determination" that a client intends to testify falsely; *State* v. *Hischke*, 639 N.W.2d 6, 7–8 (Iowa 2002); *Commonwealth* v. *Mitchell*, 438 Mass. 535, 545–46, 781 N.E.2d 1237, cert. denied, 539 U.S. 907, 123 S. Ct. 2253, 156 L. Ed. 2d 118 (2003); as well as "compelling support" for concluding that the client will commit perjury, and "actual knowledge" for such a conclusion. *Commonwealth* v. *Mitchell*, supra, 545–46; see also E. Kimball, commentary, "When Does A Lawyer 'Know' Her Client Will Commit Perjury?," 2 Geo. J. Legal Ethics 579, 581 (1988–1989) (arguing that rule 3.3 should be interpreted to mean that lawyer "is subject to sanction [for using false evidence] when she [1] subjectively has thought about the possibility of falsity, and [2] has no reasonable doubt that the proposed testimony would be false"); N. Lefstein, "Client Perjury in Criminal Cases: Still in Search of An Answer," 1 Geo. J. Legal Ethics 521, 528 (1987–1988) ("counsel should not judge the client's testimony as false unless there is absolutely no doubt about the matter"); C. Rieger, "Client Perjury: A Proposed Resolution of the Constitutional and Ethical Issues," 70 Minn. L. Rev. 121, 149 (1985–1986) (arguing that counsel should not judge client's testimony as false unless there is no doubt about matter). Although we need not in the present case elaborate to any extent about the meaning of actual knowledge, the pertinent rules and commentary; see footnotes 2 and 14 of this opinion; make it clear that an attorney, before invoking the rule, must act in good faith and have a firm basis in objective fact. Conjecture or

Conduct 3.3, commentary; Rules of Professional Conduct 1.0 (g);[14] see also *United States ex rel. Wilcox* v. *Johnson,* 555 F.2d 115, 122 (3d Cir. 1977) (reaching conclusion that federal counterpart requires "actual knowledge"); *United States* v. *Del Carpio-Cotrina,* 733

speculation that the defendant intends to testify falsely would not be enough. Nor would mere inconsistencies in the evidence or in the defendant's version of events translate to actual knowledge, even though they may raise concerns in counsel's mind.

[14] The commentary to rule 3.3 (a) (3) of the Rules of Professional Conduct provides: "Subsection (a) (3) requires that the lawyer refuse to offer evidence that the lawyer knows to be false, regardless of the client's wishes. This duty is premised on the lawyer's obligation as an officer of the court to prevent the trier of fact from being misled by false evidence. A lawyer does not violate this Rule if the lawyer offers the evidence for the purpose of establishing its falsity.

"If a lawyer knows that the client intends to testify falsely or wants the lawyer to introduce false evidence, the lawyer should seek to persuade the client that the evidence should not be offered. If the persuasion is ineffective and the lawyer continues to represent the client, the lawyer must refuse to offer the false evidence. If only a portion of a witness' testimony will be false, the lawyer may call the witness to testify but may not elicit or otherwise permit the witness to present the testimony that the lawyer knows is false.

"The duties stated in subsections (a) and (b) apply to all lawyers, including defense counsel in criminal cases. In some jurisdictions, however, courts have required counsel to present the accused as a witness or to give a narrative statement if the accused so desires, even if counsel knows that the testimony or statement will be false. The obligation of the advocate under the Rules of Professional Conduct is subordinate to such requirements.

"*The prohibition against offering false evidence only applies if the lawyer knows that the evidence is false. A lawyer's reasonable belief that evidence is false does not preclude its presentation to the trier of fact. A lawyer's knowledge that evidence is false, however, can be inferred from the circumstances.* See [Rules of Professional Conduct] 1.0 (g). Thus, although a lawyer should resolve doubts about the veracity of testimony or other evidence in favor of the client, the lawyer cannot ignore an obvious falsehood.

"Because of the special protections historically provided criminal defendants, however, *this Rule does not permit a lawyer to refuse to offer the testimony of such a client where the lawyer reasonably believes but does not know that the testimony will be false. Unless the lawyer knows the testimony will be false, the lawyer must honor the client's decision to testify.*" (Emphasis added.)

Rule 1.0 (g) of the Rules of Professional Conduct provides: " 'Knowingly,' 'known,' or 'knows' denotes actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances."

F. Sup. 95, 99 (S.D. Fla. 1990) (same). We disagree with the state's implicit contention, however, that the fact that the Rules of Professional Conduct impose an actual knowledge standard also necessarily resolves the question of the nature of proof and the procedures by which a trial court determines whether that standard has been met. Indeed, *how* to implement the obligations imposed by rule 3.3 (a) (3) when the question of perjured testimony by a defendant arises presents a separate and distinct issue. See *State* v. *McDowell*, 266 Wis. 2d 599, 635–40, 669 N.W.2d 204 (App. 2003), aff'd, 272 Wis. 2d 488, 681 N.W.2d 500, cert. denied, 543 U.S. 938, 125 S. Ct. 327, 160 L. Ed. 2d 246 (2004). Nonetheless, we agree with the state that the defendant cannot prevail on his claim in light of Berke's uncontested representations and the defendant's conduct in response to Berke's invocation of rule 3.3 (a) (3). Therefore, we need not consider the thorny questions of whether, under other circumstances, an evidentiary hearing would be required and the nature of proof necessary to meet the actual knowledge standard of rule 3.3 (a) (3).[15]

---

[15] A survey of case law reveals that how such actual knowledge is ascertained can raise troubling concerns. One jurisdiction has stated that, "absent the most extraordinary circumstances, [a] criminal defense counsel, as a matter of law, cannot know that a client is going to testify falsely absent the client's admission of the intent to do so." *State* v. *McDowell*, supra, 266 Wis. 2d 638–39; id., 637 ("With a lesser standard [than requiring the client to admit to counsel an intent to testify falsely] . . . [h]ow, really, would counsel 'know,' absent [such] an admission from the defendant? And then, what would be counsel's corresponding duty? In trial preparation, would counsel investigate the facts in order to advocate zealously, or to determine the veracity of a client's account? Should counsel refrain from looking too carefully at the facts for fear of concluding that a client's account is false? Without a client's admission of intent to testify falsely, counsel sails swirling seas, changeable from one moment to the next, without a single star by which to chart a course."). Another court has concluded that the beyond a reasonable doubt standard essentially would eviscerate rule 3.3 because it would be "virtually impossible to satisfy unless the lawyer had a direct confession from his or her client or personally witnessed the event in question." *State* v. *Hischke*, 639 N.W.2d 6, 10 (Iowa 2002).

We first note that, "[i]t long has been the practice that a trial court may rely upon certain representations made to it by attorneys, who are officers of the court and bound to make truthful statements of fact or law to the court. See Rules of Professional Conduct 3.3 (a) (1)." *State* v. *Smith,* 289 Conn. 598, 609, 960 A.2d 993 (2008); id. ("[a]gainst the backdrop provided by this fundamental principle of ethical conduct, this court has noted that, when determining whether to accept the entry of a nolle prosequi pursuant to [General Statutes] § 54-56b, 'the trial court need not receive evidence, and thus makes no findings of fact, to determine the accuracy of the state's representations' "); see, e.g., *State* v. *Drakeford,* 261 Conn. 420, 427, 802 A.2d 844 (2002) (Noting that, in safeguarding criminal defendants' right to effective assistance of counsel, "the trial court must be able, and be freely permitted, to rely upon [defense] counsel's representation that the possibility of such a conflict does or does not exist. . . . The reliance in such an instance is upon the solemn representation of a fact made by [the] attorney as an officer of the court. . . . The course thereafter followed by the court in its inquiry depends upon the circumstances of the particular case." [Citations omitted; internal quotation marks omitted.]); *State* v. *Nguyen,* 253 Conn. 639, 657–58, 756 A.2d 833 (2000) ("The trial court was entitled to credit the truth of defense counsel's assertions . . . and, therefore, to rely on them in support of its finding that the sequestration order had been violated. . . . Accordingly, to require an evidentiary showing to support representations of counsel concerning such matters would impugn the veracity of counsel and impose a staggering burden of time and effort on our already overburdened court system. . . . Indeed, given defense counsel's explanation of events, it is highly doubtful that an evidentiary hearing on the factual underpinnings of the prosecutor's allegations would

have been of any value whatsoever." [Citations omitted; internal quotation marks omitted.]); *State* v. *Barnes*, 99 Conn. App. 203, 219–20, 913 A.2d 460 ("While *Holloway* v. *Arkansas*, [435 U.S. 475, 486, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978)] emphasized that it was not transferring to defense counsel the authority of the trial judge to rule on the existence or risk of a conflict, the trial court must be able, and be freely permitted, to rely upon counsel's representation that the possibility of such a conflict does or does not exist. . . . The reliance in such an instance is upon the solemn representation of a fact made by [the] attorney as an officer of the court." [Internal quotation marks omitted.]), cert. denied, 281 Conn. 921, 918 A.2d 272 (2007).

We presume that the representations by Berke that it was necessary for him to invoke rule 3.3, which effectively conveyed to the court that he had actual knowledge that the defendant intended to commit perjury and that he had been unsuccessful in attempts to persuade the defendant not to testify falsely,[16] were made with these ethical considerations in mind. Therefore, we examine his representations in the context of the competing interests at stake, namely, his duty to represent his client zealously while also adhering to his duty of fidelity to the court. See *Nix* v. *Whiteside*, 475 U.S. 157, 168, 106 S. Ct. 988, 89 L. Ed. 2d 123 (1986) ("[The Rules of Professional Conduct] confirm that the legal profession has accepted that an attorney's ethical duty to advance the interests of his client is limited by an

---

[16] We presume that, when Berke invoked rule 3.3 (a) (3), he did so mindful of the actual knowledge standard imposed therein, and only after adhering to his obligations under the rule, which instructs that, "[i]f a lawyer knows that the client intends to testify falsely or wants the lawyer to introduce false evidence, the lawyer should seek to persuade the client that the evidence should not be offered. If the persuasion is ineffective and the lawyer continues to represent the client, the lawyer must refuse to offer the false evidence." Rules of Professional Conduct 3.3 (a) (3), commentary. The defendant does not claim otherwise.

equally solemn duty to comply with the law and standards of professional conduct; it specifically ensures that the client may not use false evidence. This special duty of an attorney to prevent and disclose frauds upon the court derives from the recognition that perjury is as much a crime as tampering with witnesses or jurors by way of promises and threats, and undermines the administration of justice."). In our view, Berke made the minimum disclosure necessary to alert the court to the problem, while declining to offer further specificity in order to maintain the defendant's confidences and to allow for his continued zealous advocacy at trial. Accordingly, we conclude that the trial court reasonably relied on his representations. See *Commonwealth* v. *Mitchell*, 438 Mass. 535, 552, 781 N.E.2d 1237 (stating that, in "evaluating the [perjury] situation, the judge will have to rely on the representations of counsel, which of necessity will be cryptic, because counsel is the one who must make the disclosure while maintaining client confidences and allowing for continued zealous advocacy at trial"), cert. denied, 539 U.S. 907, 123 S. Ct. 2253, 156 L. Ed. 2d 118 (2003); *Newcomb* v. *State*, 651 P.2d 1176, 1177–82 (Alaska App. 1982) (defense counsel acted properly when he cited to ethics rule that sufficiently informed court of anticipated perjury by defendant).

This reliance was particularly justified in the present case because of the absence of any objection by the defendant or any other reason to call into question Berke's representation of this dilemma. For example, the defendant did not contest Berke's explanation to Judge Alexander, made in the defendant's presence, that "ethical responsibilities [precluded Berke from] pursuing certain facts" at trial, a dilemma that Berke noted applied only to the defendant's testimony. The defendant also answered in the affirmative Judge Alexander's questions as to whether he understood that,

should he decide to testify in the narrative, Berke was under "no obligation based on his ethical obligations to argue [the defendant's testimony] to the jury" and that the defendant "voluntarily put [him]self in this situation."

The defendant does not claim that he did not understand the import of these statements.[17] Indeed, in the presence of the defendant, Judge Hadden clearly stated that "the position of counsel is that the ethical code prohibits him from participating in the testimony of the defendant in that it is counsel's belief that such testimony was perjury." The defendant never objected to this statement, asked for clarification or requested a hearing on this matter.

Therefore, the defendant's failure to contest the factual representations, which gave rise to the ethical dilemma, demonstrates his obvious acquiescence to Berke's statements and supports Judge Alexander's reliance on their accuracy and veracity as they pertained to the defendant's intent to perjure himself.[18] Under these circumstances, there was no need for the trial court to delve further into the basis for that determination.[19] See *United States* v. *Henkel*, 799 F.2d 369, 370 (7th

[17] Although the defendant does not claim in the present case that he failed to understand either Berke's invocation of rule 3.3 or the basis for Judge Alexander's decision that the defendant could testify only in the narrative form, we note that it is the far better practice for trial courts to ensure, on the record, that the defendant fully understands the basis for his counsel's invocation of rule 3.3 (a) (3).

[18] Indeed, in light of the defendant's admission to having committed perjury on several occasions throughout this case; see footnote 5 of this opinion; the defendant would be hard-pressed to claim that he was harmed by the trial court's reliance on Berke's representation.

[19] Therefore, we do not decide whether, under other circumstances, a trial court should conduct an evidentiary hearing and whether other witnesses could be called and a new attorney appointed. We note, however, that some commentators have suggested that such procedures during trial could risk interfering with the confidentiality between the defendant and his counsel. See generally N. Lefstein, "Client Perjury in Criminal Cases: Still in Search of An Answer," 1 Geo. J. Legal Ethics 521, 540 (1987–1988); note, "Criminal Defendant Perjury: A Lawyer's Choice Between Ethics, the Constitution,

Cir. 1986) (defendant's failure to contradict counsel's representations, or court's assessment of ethical dilemma, confirms that counsel knew his client intended to commit perjury), cert. denied, 479 U.S. 1101, 107 S. Ct. 1327, 94 L. Ed. 2d 178 (1987).

### III

Finally, we consider the defendant's claim that, accepting as true that the trial court properly determined that the requirements of rule 3.3 (a) (3) had been met, the trial court's rulings on the procedures to be employed in the present case were "constitutionally excessive." First, the defendant asserts that it was improper to preclude Berke from objecting during the state's cross-examination of the defendant. Second, he claims that Berke should have been permitted to address the nonperjurious portions of the defendant's testimony during closing argument. We conclude that the first claim is factually inaccurate, while the second claim was waived.

The record reveals the following additional undisputed facts relating to the first of these claims. During the canvass of the defendant on the consequences of the perjury issue, Judge Alexander explained that Berke "is not going to be able to help you with the cross-examination, *unless it is a—basically a rule of evidence, such that potentially is going to require no answer.*" (Emphasis added.) Judge Alexander later specified that there would be no objections to the facts of the case, the defendant's credibility or his criminal history. She therefore noted that the defendant was "going to be *limited* as to whether or not any objections are made on your behalf." (Emphasis added.) During

and the Truth," 28 New Eng. L. Rev. 881, 902 (1994). Other courts have suggested that a defendant should pursue an evidentiary hearing in a posttrial habeas proceeding when an adequate record can be made without any undue strain on an existing attorney-client relationship. See, e.g., *Brown* v. *Commonwealth,* 226 S.W.3d 74, 90 n.4 (Ky. 2007). We express no opinion on either option.

the defendant's cross-examination and redirect, Berke either objected or responded to objections several times on the defendant's behalf. In one instance, Berke asked that the defendant be allowed to finish his response to a question. Berke later objected to a question on the ground that the state had failed to lay a foundation for the admission of a prior inconsistent statement. Berke also responded to the state's hearsay objection to certain testimony by the defendant, claiming that the testimony was not being offered for its truth. Judge Hadden did not admonish Berke for interposing any of these objections.

From the foregoing, therefore, it is clear that Berke was not prohibited from making objections during the defendant's cross-examination. Indeed, these facts and Judge Alexander's direction to Berke make it clear that Berke was limited only to the extent that he could not object to the facts relating to the defendant's perjurious testimony or to matters relating to his credibility. This procedure, however, was within the court's sound discretion considering the ethical constraints on Berke not to aid in the presentation of perjurious evidence. See L. Perrin, "The Perplexing Problem of Client Perjury," 76 Fordham L. Rev. 1707, 1737 (2007) (noting that, under narrative approach, attorney may object to matters of form, but not to evidence related to false testimony).

With regard to the defendant's contention that the trial court improperly prohibited Berke from making a closing argument regarding the nonperjurious portions of the defendant's testimony, we conclude that the defendant waived this claim. As we previously have noted, when Berke first raised the question about closing argument, he proposed that, although he ethically could not discuss the defendant's testimony at closing argument, the defendant should be allowed to present such argument on his own behalf. Judge Alexander determined that it was premature to rule definitively on this issue, noting that, "th[is] may be something

[that] Judge Hadden can rule on once the testimony is in . . . ." Nonetheless, Judge Alexander gave the following direction regarding closing argument: "Attorney Berke will have the opportunity to appropriately give a summation on all of the other aspects of this case and all of the other evidence that was presented. And . . . you can so advise [the defendant] that if he wishes to . . . directly argue his testimony to the jury, I'll give him the opportunity to do that. I would expect counsel to explain to him what argument is. He will have every opportunity to present such argument as he feels is necessary. You, Attorney Berke, can make any comment regarding the rest of the case. The total argument by counsel and by [the defendant], if he chooses to participate, will be one hour." Following the defendant's testimony, and after the defense rested, Berke moved to withdraw as counsel on the ground that he would be restricted in his closing argument for the defendant. As part of his decision denying Berke's motion, Judge Hadden ruled that both the defendant, limited to his own testimony, and Berke, limited to the remainder of the evidence, could present closing argument. Neither Berke nor the defendant ever claimed that Berke should be permitted to argue portions of the defendant's testimony that were nonperjurious. Thereafter, Berke informed Judge Hadden that he had decided to waive closing argument. Judge Hadden expressly inquired whether the defendant understood and agreed with that decision, to which the defendant twice responded in the affirmative. Therefore, the defendant's claim that Berke should have been allowed to argue portions of the defendant's testimony was waived. Accordingly, we do not consider this claim on the merits.[20]

The judgment is affirmed.

In this opinion the other justices concurred.

[20] We note that, although the defendant has placed a constitutional tag on this claim in his brief to this court, he does not invoke *State* v. *Golding*, supra, 213 Conn. 233, as he has for his first two claims; see footnote 9 of

this opinion; nor does the defendant cite any authority for his claim that the restriction on Berke's ability to argue the nonperjurious portions of his testimony was unconstitutional.