******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBINSON, C. J., concurring in the judgment. I concur in this court's judgment reversing the judgment of the Appellate Court, which affirmed the conviction of the defendant, Terry Freeman, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), following the entry of a conditional plea of nolo contendere. See *State* v. *Freeman*, 201 Conn. App. 555, 568, 242 A.3d 1059 (2020). I agree with the court's ultimate conclusion that the prosecution of the defendant was time barred by the five year statute of limitations set forth in General Statutes (Rev. to 2017) § 54-193 (b)[1] on the ground that the state failed to establish that the warrant for the defendant's arrest was executed without unreasonable delay. I write separately because I respectfully disagree with those portions of the opinion announcing the judgment of the court[2] holding that the "evidence" of the "reasonable efforts to execute the arrest warrant" after the running of the statute of limitations that are required by this court's decisions in *State* v. *Swebilius*, 325 Conn. 793, 159 A.3d 1099 (2017), and *State* v. *Crawford*, 202 Conn. 443, 521 A.2d 1034 (1987), cannot be established by the factual representations of counsel. To the contrary, I conclude that the prosecutor's personal involvement in and familiarity with arranging the process by which the defendant would be transported to court from the Carl Robinson Correctional Institution for service of the warrant rendered the prosecutor's unchallenged factual representations an appropriate vehicle by which the state could establish "evidence" of its efforts to serve the warrant after the lapse of the statute of limitations. Because I nevertheless conclude that the facts established by those representations did not satisfy the state's obligation to make reasonable efforts to serve the arrest warrant following the lapse of the statute of limitations, I concur in the judgment of the court.

I note my agreement with the majority opinion's recitation of the facts, procedural history, and governing legal principles as set forth by, inter alia, *State* v. *Swebilius*, supra, 325 Conn. 793, and *State* v. *Crawford*, supra, 202 Conn. 443. Specifically, I agree that, "[w]hen an arrest warrant has been issued, and the prosecutorial official has promptly delivered it to a proper officer for service, he has done all he can under our existing law to initiate prosecution and to set in motion the machinery that will provide notice to the accused of the charges against him. When the prosecutorial authority has done everything possible within the period of limitation to evidence and effectuate an intent to prosecute, the statute of limitations is [satisfied]." (Footnote omitted.) *State* v. *Crawford*, supra, 450; see *State* v. *A. B.*, 341 Conn. 47, 57 n.6, 266 A.3d 849 (2021) (explaining that " 'satisfie[d]' is the appropriate term to describe the

state's meeting such obligation under" criminal statute of limitations). There must, "however, [be] some limit as to when an arrest warrant must be executed after its issuance . . . in order to prevent the disadvantages to an accused attending stale prosecutions, a primary purpose of statutes of limitation[s]." *State* v. *Crawford*, supra, 450. "[I]n order to [satisfy] the statute of limitations, an arrest warrant, when issued within the time limitations . . . must be executed without unreasonable delay." Id., 450–51.

In *Crawford*, this court declined to "adopt a per se approach as to what period of time to execute an arrest warrant is reasonable." Id., 451. Instead, the court clarified that "[a] reasonable period of time is a question of fact that will depend on the circumstances of each case. If the facts indicate that an accused consciously eluded the authorities, or for other reasons was difficult to apprehend, these factors will be considered in determining what time is reasonable. If, on the other hand, the accused did not relocate or take evasive action to avoid apprehension, failure to execute an arrest warrant for even a short period of time might be unreasonable and fail to [satisfy] the statute of limitations." Id.

In *State* v. *Swebilius*, supra, 325 Conn. 793, we recently held that even a very brief delay in the execution of an arrest warrant following the lapse of the statute of limitations cannot "be reasonable as a matter of law . . . ." Id., 801; see id., 809–10. We then clarified the parties' respective obligations with respect to the proof of a statute of limitations defense, observing that, "once the defendant has demonstrated his availability for arrest, he has done all that is required to carry his burden [of proving the statute of limitations defense]; the burden then shifts to the state to demonstrate that any period of delay in executing the warrant was not unreasonable." Id., 804; see id., 803 (discussing Appellate Court case law shifting burden "to the state to present evidence of its due diligence in executing the warrant"). Requiring "the state to explain why, notwithstanding the defendant's availability during the statutory period, the delay in his arrest was reasonable . . . allocates burdens efficiently by requiring each party to bring forth evidence uniquely within its knowledge." Id., 807; see id., 808 ("the state is in a far better position to determine what efforts were undertaken to ensure the defendant's prompt arrest").

We emphasized in *Swebilius* that "[t]his burden shifting scheme also encourages diligence by law enforcement officials in providing timely notice of charges to defendants. Although we decline[d] to specify the precise actions that they must undertake to serve a warrant with due diligence, or the precise timeline within which they must act, such officials must present some credible and persuasive factual basis for inaction when they fail to observe the statute of limitations. This requirement

is consistent with the principle that, when a judicial doctrine, for all practical purposes, extends the statute [of limitations] beyond its stated term, that doctrine should be applied in only limited circumstances . . . . Accordingly, once a defendant has demonstrated his availability and nonelusiveness during the statutory period, the state must then demonstrate the reasonableness of any delay between the issuance and the service of an arrest warrant, at least when service occurs after the expiration of the limitation period." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 808–809.

I agree with the majority opinion that, despite our reference in *Swebilius* requiring "that the state make *some effort* to serve the arrest warrant before the relevant statute of limitations expires . . . that opinion otherwise uniformly characterized the state's burden as requiring *reasonable* efforts . . . or evidence of due diligence . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) Thus, "reasonableness" and "due diligence" remain the touchstone in determining whether the state has demonstrated a "credible and persuasive factual basis" for its failure to serve the arrest warrant within the limitation period, and the reasonableness of the additional time needed beyond the expiration of that period. *State* v. *Swebilius*, supra, 325 Conn. 808. As *Swebilius* itself emphasized, this standard does not "impose an undue burden on the state. [The court in *Swebilius*] concluded merely that, if the defendant can demonstrate his availability during the statutory period, the state must make some effort to serve the arrest warrant before the relevant statute of limitations expires, or to offer some evidence explaining why its failure to do so was reasonable under the circumstances. Indeed, in cases involving relatively brief delays, evidence of a legitimate need to prioritize competing public safety responsibilities may well be sufficient to demonstrate compliance with the dictates of *Crawford*." Id., 814.

I part company from the conclusion in the majority opinion that a prosecutor's representations of fact to the court may not be used to satisfy the state's obligation under *Swebilius* to use "evidence" to prove the reasonableness of its efforts to serve the warrant, or the failure of those efforts. See id., 814–15. First, the majority's reading of the word "evidence" is inconsistent with its ordinary meaning, which is simply "something that furnishes proof" or "something legally submitted to a tribunal to ascertain the truth of a matter . . . ." Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) p. 402; see also American Heritage College Dictionary (4th Ed. 2007) p. 484 (defining "evidence" as "[a] thing or things helpful in forming a conclusion or judgment" or "[t]he documentary or oral statements and the material objects admissible as testimony in a court of law"). The majority's restrictive reading of the

word even goes beyond the more technical definition of the word set forth in Black's Law Dictionary, which defines "evidence" expansively as "[s]omething (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact"; Black's Law Dictionary (11th Ed. 2019) p. 697; Black's specifically draws a distinction between evidence generally and "admissible evidence." See id., pp. 697–98. Put differently, the majority opinion's reading of *Swebilius* adds the word "admissible" where it does not exist.

Second, the majority opinion's restrictive reading of the word "evidence" is in direct conflict with the well established "practice that a trial court may rely [on] certain representations made to it by attorneys, who are officers of the court and bound to make truthful statements of fact or law to the court." (Internal quotation marks omitted.) *State* v. *Chambers*, 296 Conn. 397, 419, 994 A.2d 1248 (2010); see Rules of Professional Conduct 3.3 (a) (1) (duty of candor to tribunal). Particularly given the prosecutor's role as "a high public officer" and "a minister of justice"; (internal quotation marks omitted) *State* v. *Courtney G.*, 339 Conn. 328, 341, 350 n.9, 260 A.3d 1152 (2021); accord Rules of Professional Conduct 3.8, commentary; I would not preclude our trial courts from relying on the statements of a prosecutor about events in which he or she played a personal role,[3] particularly when those factual representations are, as the dissent correctly observes in the present case, entirely uncontested. See *State* v. *Chambers*, supra, 421–22; see also, e.g., *State* v. *Nguyen*, 253 Conn. 639, 658–60, 756 A.2d 833 (2000) (trial court was not required to conduct evidentiary hearing prior to barring witness' testimony as sanction for violation of sequestration order given "effectively uncontested" representations by prosecutor and defense counsel, and defendant's failure to request evidentiary hearing). Put differently, had the defendant desired to challenge the factual underpinnings of the prosecutor's explanation of the delays, he could have done so.

Having said that, the explanation offered by the prosecutor in this case does not convince me that the state's failure to serve the arrest warrant before the expiration of the statute of limitations on November 29, 2018, and the delay in service to December 6, 2018, were in fact reasonable, even though there were two state holidays during that period and interagency coordination was required to transport the defendant from the correctional facility to court.[4] I acknowledge the prosecutor's explanation that he would not ordinarily request immediate transportation, as a "courtesy" to the various agencies involved, such as the Department of Correction and the judicial marshals, and his office's ordinary timing and practices with respect to the transportation of inmates to court. Nevertheless, I remain unconvinced that the state made the requisite reasonable efforts to

serve the warrant in a timely fashion, insofar as there is no indication that the state attempted to expedite the process to have the defendant transported sooner, despite knowing of the impending expiration of the statute of limitations. Although it may well be that expediting the transportation of the defendant would in fact have been unreasonable, given its ripple effect on other judicial or law enforcement matters; cf. *State* v. *Swebilius*, supra, 325 Conn. 814; the current state of the record in this case leaves me entirely unable to arrive at that conclusion as a matter of law because the prosecutor's representations do not establish that expediting the transportation of the defendant to court would have resulted in anything more than potential inconvenience to the state actors involved. Because the state failed to carry its burden of proving the reasonableness of its failure to serve the arrest warrant on or before the date on which the statute of limitations expired, on November 29, 2018, I agree with the conclusion in the majority opinion that the robbery charge is time barred and should be dismissed on remand.

I join in the judgment of the court to reverse the judgment of the Appellate Court.

[1] General Statutes (Rev. to 2017) § 54-193 (b) provides: "No person may be prosecuted for any offense, other than an offense set forth in subsection (a) of this section, for which the punishment is or may be imprisonment in excess of one year, except within five years next after the offense has been committed."

The statute was revised in 2019. See Public Acts 2019, No. 19-16, § 17. All references to the statute in this opinion are to the 2017 revision, unless otherwise noted.

[2] Hereinafter, in the interest of simplicity, I refer to the opinion announcing the judgment of the court as the majority opinion.

[3] The majority opinion accurately quotes this court's decision in *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 153–54, 496 A.2d 476 (1985), as providing: "Fairly stated, evidence legally is the means by which alleged matters of fact are properly submitted to the trier of fact for the purpose of proving a fact in issue. On the other hand, 'proof' is the result or the effect of such 'evidence.' Moreover, [counsel's] representations [are] not 'testimony,' which, in turn, when given under oath or stipulated to, is a species of 'evidence.' " In my view, *Cologne* is distinguishable, notwithstanding its conclusion that the representations of the plaintiffs' attorney were a factually insufficient basis on which to hold the defendants in indirect civil contempt of court, because those representations did not concern events that the attorney herself had witnessed. See *Cologne* v. *Westfarms Associates*, supra, 153, 156. Indeed, this court's decision in *Cologne* contemplates permitting courts to rely on attorneys' factual representations concerning events in which they are personally involved—noting specifically that "the record is barren of any indication that the plaintiffs' counsel herself had directly observed the conduct of the defendant that was purported to constitute contempt." Id., 153.

[4] In addition to noting that the Thanksgiving holiday and weekend days fell in the period between the issuance of the warrant and the date on which the defendant was transferred to court to allow for execution of the warrant, the prosecutor explained: "So, it was reasonable because there are a number of factors that play in effectuating the transport of an inmate to this court here in Milford. It is not as simple as having the West Haven Police Department take a ride up to Carl Robinson [Correctional Institution] and serve the warrant because . . . if that warrant is served, [the defendant] would have to be transported here to court the next day for his arraignment before the court. So, it's not as logistically simple as just taking a ride up there and serving the warrant.

"As Your Honor is aware, there are certain limitations on the staff of this court with respect to how many inmates will be housed downstairs on any

particular day. I know that our office and our administrative staff, in making requests for writs of habeas corpus, are mindful of dates . . . [that are] already at capacity as far as prisoner transport. It also requires the involvement of other agencies, notably the judicial marshals, to transport inmates from . . . correctional facilities and—and, frankly, I think [as] a matter of course and a matter of courtesy, we . . . haven't made a habit of requesting transport a day later, two days later or a week later. I think typically it's a date that kind of works with the calendar that has been set out as far as how many inmates are being transported to court on a given day, and then giving a little bit of lead time for the relevant agencies to . . . plan the transport of the inmate to court. . . .

"[A]s to whether it was reasonable that it was done on December 6, roughly two weeks after, maybe three weeks after the warrant had been signed, and about two weeks after the habeas was requested, you know, I think that's consistent with our office's practice and consistent with—with our course of action, which is to [be] mindful that there are other people involved in the system who have to act when we issue a writ of habeas corpus, and giving the two week lead time is reasonable to allow all of those various factors, the time to make preparations."

---