# STATE OF CONNECTICUT *v.* TERRY FREEMAN
## (SC 20554)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.*

*Syllabus*

Convicted, on a conditional plea of nolo contendere, of the crime of robbery
in the first degree, the defendant appealed to the Appellate Court, claim-
ing that his prosecution was time barred by the applicable five year
statute of limitations ((Rev. to 2017) § 54-193 (b)) because, although the
warrant for his arrest was issued two weeks before the expiration of

felony. 4. Knowledge of the officer's presence may cause the suspected
violator to cease the commission of a suspected felony before the officer
obtains sufficient evidence to establish grounds for arrest.").

* This case originally was scheduled to be argued before a panel of this
court consisting of Chief Justice Robinson and Justices McDonald, D'Auria,
Mullins, Kahn, Ecker and Keller. Although Justice Mullins was not present
at oral argument, he has read the briefs and appendices, and listened to a
recording of the oral argument prior to participating in this decision.

State *v.* Freeman

the limitation period set forth in § 54-193 (b), it was executed one week after its expiration. The defendant had filed a motion to dismiss, which the trial court denied, finding that, because there was at least some evidence that the state had made efforts to execute the warrant before the expiration of the limitation period, the delay in the execution of the warrant was reasonable. At the hearing on that motion, the prosecutor relied on a stipulation of facts setting forth a relevant chronology of events. The stipulation provided that, while incarcerated on unrelated charges in early November, 2018, the defendant confessed to his involvement in the robbery, which occurred on November 29, 2013. On November 19, 2018, the police obtained a signed warrant for the defendant's arrest and requested that the Office of the State's Attorney prepare an application for a writ of habeas corpus to have the defendant transported from the correctional facility at which he was incarcerated to the trial court, where he could be served with the warrant. The Office of the State's Attorney prepared the application for a writ of habeas corpus on November 21, 2018, but it was not signed until November 27, 2018. Thereafter, on December 6, 2018, the defendant was transported to court, where he was served with the warrant. The prosecutor adduced no additional evidence at the hearing, aside from the arrest warrant and the writ of habeas corpus. When the trial court asked the prosecutor to explain the three week delay between the issuance and execution of the arrest warrant, he stated that the warrant was not picked up until two days after it was signed by the judge and that the Thanksgiving holiday took place during the period between when the application for the writ of habeas corpus was prepared and signed. He also explained that the procedure for transporting an inmate to court involves various factors, including staff availability, limits on how many inmates can be transported on a given day, and coordination among various state agencies, such that a one week delay between the signing of a writ of habeas corpus and the transport of an inmate was not unusual. On appeal to the Appellate Court from the denial of the defendant's motion to dismiss, that court affirmed, concluding that the trial court had correctly determined that there was sufficient evidence to establish that the delay in the service of the arrest warrant after the expiration of the statute of limitations was reasonable. On the granting of certification, the defendant appealed to this court. *Held* that the state failed to satisfy its burden of establishing that it acted with due diligence in its efforts to execute the arrest warrant within the limitation period without unreasonable delay, and, accordingly, the judgment of the Appellate Court was reversed and the case was remanded with direction to reverse the trial court's judgment and to order the trial court to grant the defendant's motion to dismiss: once a defendant demonstrates his nonelusiveness and his availability for arrest during the time period between the issuance and the execution of a warrant, the burden shifts to the state to present evidence of its due diligence and reasonable efforts in executing the

State *v.* Freeman

warrant, and this court clarified that, to satisfy that burden, the state must produce admissible evidence to explain the reasonableness of the delay and to demonstrate its due diligence, which does not include the unsworn factual representations of counsel, insofar as such assertions cannot be tested in the crucible of cross-examination; in the present case, the parties did not dispute that the defendant met his burden of demonstrating his availability for arrest during the statutory period and, therefore, that the burden shifted to the state to present evidence of its due diligence in executing the warrant; moreover, the stipulation on which the state relied was an unadorned chronology of events that, despite reflecting a three week delay between the issuance and execution of the arrest warrant, did not reveal the reasons for the various delays or explain how the efforts undertaken to execute the warrant reflected the state's due diligence, no evidence was presented at the hearing to establish the facts underlying the prosecutor's assertions that the delay was caused by a holiday and general logistical factors affecting the transportation of inmates, and the prosecutor could not explain why the state did not try to arrange for the transportation of the defendant before the expiration of the statute of limitations.

(*One justice concurring separately*; *three justices dissenting in one opinion*)

Argued February 17—officially released August 30, 2022

*Procedural History*

Information charging the defendant with the crimes of robbery in the first degree, conspiracy to commit robbery in the first degree, larceny in the fifth degree, and criminal possession of a firearm, brought to the Superior Court in the judicial district of Ansonia-Milford, where the court, *Brown, J.*, denied the defendant's motion to dismiss; thereafter, the defendant was presented to the court, *Brown, J.*, on a conditional plea of nolo contendere to the charge of robbery in the first degree; judgment of guilty in accordance with the plea; subsequently, the state entered a nolle prosequi as to the charges of conspiracy to commit robbery in the first degree and criminal possession of a firearm, and the court dismissed the charge of larceny in the fifth degree; thereafter, the defendant appealed to the Appellate Court, *Bright, C. J.*, and *Cradle* and *Alexander, Js.*, which affirmed the trial court's judgment, and the defen-

State *v.* Freeman

dant, on the granting of certification, appealed to this court. *Reversed*; *judgment directed.*

*James E. Mortimer*, assigned counsel, for the appellant (defendant).

*Thadius L. Bochain*, deputy assistant state's attorney, with whom, on the brief, were *Margaret E. Kelley*, state's attorney, *Matthew R. Kalthoff*, assistant state's attorney, and *Samantha L. Oden*, former deputy assistant state's attorney, for the appellee (state).

*Opinion*

ECKER, J. The defendant, Terry Freeman, appeals from the judgment of the Appellate Court affirming his conviction of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), following the entry of a conditional plea of nolo contendere. The sole issue on appeal is whether the prosecution of the defendant was time barred by the five year statute of limitations set forth in General Statutes (Rev. to 2017) § 54-193 (b)[1] on the ground that the state failed to establish that the warrant for the defendant's arrest was executed without unreasonable delay. See *State* v. *Swebilius*, 325 Conn. 793, 802, 159 A.3d 1099 (2017); *State* v. *Crawford*, 202 Conn. 443, 451, 521 A.2d 1034 (1987). We conclude that the state failed to produce sufficient evidence to establish that the arrest warrant was executed with due diligence, and, accordingly, we reverse the judgment of the Appellate Court.

---

[1] General Statutes (Rev. to 2017) § 54-193 (b) provides: "No person may be prosecuted for any offense, other than an offense set forth in subsection (a) of this section, for which the punishment is or may be imprisonment in excess of one year, except within five years next after the offense has been committed."

The statute was revised in 2019. See Public Acts 2019, No. 19-16, § 17. All references to the statute in this opinion are to the 2017 revision, unless otherwise noted.

State *v.* Freeman

The Appellate Court's opinion sets forth the following relevant facts, which we supplement with additional undisputed facts as necessary. "On November 5, 2018, Jeffrey Gabianelli, a detective with the West Haven Police Department, received a letter from the defendant containing information about an armed robbery that had occurred at the Wine Press Liquor Store in West Haven on November 29, 2013. The next day, Gabianelli visited the defendant at the Carl Robinson Correctional Institution in Enfield, where the defendant was incarcerated on unrelated charges. The defendant confessed to Gabianelli as to his involvement in the November 29, 2013 robbery. On November 9, 2018, Gabianelli prepared an arrest warrant. On November 15, 2018, a Superior Court judge signed the warrant. On November 19, 2018, John Laychak, a West Haven police officer, obtained the signed warrant and submitted a request that the Office of the State's Attorney prepare an application for a writ of habeas corpus to transport the defendant to the Superior Court in the judicial district of Ansonia-Milford for service of the arrest warrant. On November 21, 2018, the Office of the State's Attorney prepared the application for a writ of habeas corpus requesting that the defendant be transported to the court on December 6, 2018. On November 27, 2018, a prosecutor and a clerk of the court signed the writ of habeas corpus. On December 6, 2018, the defendant was transported to the Superior Court where he was served with the arrest warrant.

"Thereafter, the defendant filed a motion to dismiss, claiming that the prosecution was barred due to the lapse of the five year statute of limitations set forth in § 54-193 (b). The defendant argued that the statute of limitations had lapsed on November 29, 2018, five years after the robbery had occurred, and that the state had failed to proffer sufficient evidence to show that the delay in the execution of the arrest warrant until Decem-

State *v.* Freeman

ber 6, 2018, was reasonable.'' (Footnotes omitted.) *State* v. *Freeman*, 201 Conn. App. 555, 557–58, 242 A.3d 1059 (2020).

The trial court, *Brown, J.*, held an evidentiary hearing on the defendant's motion to dismiss. The prosecutor conceded that the defendant had met his burden of demonstrating that he ''lived openly, was nonelusive, and was available for arrest throughout the relevant period of limitation'' and, thus, that the burden shifted to the state to demonstrate that the warrant was executed without unreasonable delay. See *State* v. *Swebilius*, supra, 325 Conn. 807 (''[o]nce the defendant has presented evidence of his availability for arrest, it is reasonable and proper that the burden should then shift to the state to explain why, notwithstanding the defendant's availability during the statutory period, the delay in his arrest was reasonable''). To fulfill that burden, the state relied on a written stipulation of facts agreed on by the parties, which set forth the relevant chronology of events described previously in this opinion. The state adduced no additional evidence, aside from the arrest warrant application issued on November 15, 2018, and the writ of habeas corpus dated November 21, 2018.

The trial court asked the prosecutor to explain the delay between the issuance of the arrest warrant on November 15, and its execution on December 6. The prosecutor explained that the court liaison officer did not pick up the signed warrant until Monday, November 19, and that he had no ''information as to why [the warrant] wasn't picked up on [that] Friday [i.e., November 16],'' but ''the court liaison officer would . . . pick up the warrant [only] during the business day, so that would account, at least in part, for that four day gap . . . .'' The prosecutor did not offer an explanation for the two day gap between November 19, and November 21, the date on which the state prepared the application for the writ of habeas corpus. Regarding the six day

State *v.* Freeman

gap between November 21, and November 27, the date
on which the writ of habeas corpus was signed, the
prosecutor explained that Thursday, November 22, was
the Thanksgiving holiday and that Friday, November
23, was "a relatively light day . . . ." As for the nine
day gap between November 27, and December 6, the
date on which the defendant was transported and the
warrant was executed, the prosecutor explained that
the transport was arranged "as a matter of course" in
light of the various "factors that play in effectuating
the transport of an inmate to [the] court," such as the
availability of staff, the maximum number of inmates
that may be transported on a given day, and the neces-
sary coordination among the relevant state agencies.
The prosecutor "could offer no explanation as to why
the defendant was not transported to court for service
of the warrant on or before November 29, 2018, except
to say that a one week delay between the signing of
a habeas writ and the transport of a defendant was
not unusual."

The trial court denied the defendant's motion to dis-
miss, finding "that the state, in fact, made at least some
effort to execute the warrant on or before November
29, 2018. The state acted reasonably and diligently to
follow up on the defendant's letter, to obtain his confes-
sion, and to prepare an arrest warrant for court review
and action. Once the warrant was issued, the state acted
reasonably and made at least some effort to have the
defendant brought to court for execution of the war-
rant." Although the statute of limitations expired seven
days before the warrant was executed, the trial court
found "at least some evidence explaining why the delay
was reasonable. The writ had to be prepared and
approved before the defendant could be ordered transported
to court." Significantly, the court noted that "[t]he state
should have been more mindful that, as of November
15, 2018, [the state] . . . had [only] fourteen more days

State *v.* Freeman

to get the warrant executed to be within the five year limitation period'' but determined that, because the state made some ''efforts to meet the November 29, 2018 [expiration] date,'' the delay in the execution of the warrant was reasonable.

The defendant thereafter entered a conditional plea of nolo contendere to the charge of robbery in the first degree. The trial court sentenced the defendant to one year of imprisonment, consecutive to his current sentence.

The defendant appealed from the trial court's judgment to the Appellate Court, claiming that the trial court had improperly denied his motion to dismiss because (1) it misinterpreted and misapplied the legal standard set forth in *State* v. *Crawford*, supra, 202 Conn. 443, and *State* v. *Swebilius*, supra, 325 Conn. 793, and (2) there was insufficient evidence to establish that the delay in the service of the arrest warrant after the expiration of the statute of limitations was reasonable. See *State* v. *Freeman*, supra, 201 Conn. App. 559. The Appellate Court rejected the defendant's first claim, explaining that *Swebilius* neither ''qualif[ies] the efforts the state must show to satisfy its burden nor explain[s] the degree of effort necessary.'' Id., 563. Instead, ''the state must prove that any delay in serving the warrant beyond the statute of limitations was reasonable. What efforts the state made to accomplish service and the reasons why service was not accomplished before the statute of limitations expired are necessary parts of the court's reasonableness analysis.'' Id., 564. The Appellate Court concluded that ''the [trial] court applied the correct legal test as set forth by [this court] in *Swebilius* and by [the Appellate Court] in [other cases].'' Id., 566.

Regarding the sufficiency of the evidence produced by the state, the Appellate Court determined that the state had fulfilled its burden of demonstrating that it

State *v.* Freeman

made reasonable efforts to obtain and execute the
arrest warrant, reasoning that, ''[f]ollowing the defen-
dant's confession to [the detective], the state made con-
tinuous efforts to obtain a warrant and to facilitate
the appropriate transportation of the defendant to the
Superior Court for the execution of that warrant; efforts
that were all made before the statute of limitations
expired.'' Id. Although the defendant was not trans-
ported and served with the warrant until seven days
after the expiration of the statute of limitations, the
Appellate Court opined that ''the nine day delay from
the signing of the habeas writ to the transportation of
the defendant was not unusual, as a matter of course,
given the logistical, practical and safety precautions
that must be taken whenever an incarcerated individual
is transported from a correctional facility to a court-
house.'' Id., 567–68. The court further explained that it
was ''within the purview of the trial court to use its
knowledge of the inner workings of the courts and the
process by which incarcerated persons are transported
to a court in its determination of the reasonableness of
the state's efforts.'' Id., 568. Accordingly, the Appellate
Court affirmed the judgment of conviction. Id.

On appeal to this court,[2] the defendant claims that
the Appellate Court improperly upheld the trial court's
denial of his motion to dismiss on the basis of its conclu-
sion that the state executed the arrest warrant without
unreasonable delay. The defendant contends that ''[t]here
was no evidence of any effort by the state to attempt
to execute the warrant before the statute of limitations
expired or any evidence offered to explain why the
state's failure to do so was reasonable under these

_____

[2] We granted the defendant's petition for certification to appeal, limited
to the following issue: ''Did the Appellate Court correctly conclude that the
trial court properly denied the defendant's motion to dismiss on the basis
of its determination that the state had executed the arrest warrant without
unreasonable delay?'' *State* v. *Freeman*, 336 Conn. 907, 243 A.3d 1180 (2021).

State *v.* Freeman

circumstances.'' The state responds that the Appellate
Court correctly concluded that the trial court's denial
of the defendant's motion to dismiss was proper
because the state fulfilled its burden of proving that
the warrant was executed without unreasonable delay.
We agree with the defendant.

The standard of review on a motion to dismiss is well
established. ''Because a motion to dismiss effectively
challenges the jurisdiction of the court, asserting that
the state, as a matter of law and fact, cannot state a
proper cause of action against the defendant, our review
of the [trial] court's legal conclusions and resulting
denial of the defendant's motion to dismiss is de novo.''
(Internal quotation marks omitted.) *State* v. *A. B.*, 341
Conn. 47, 55, 266 A.3d 849 (2021). Whether a warrant
was executed within a reasonable period of time under
§ 54-193 (b) ordinarily ''is a question of fact that will
depend on the circumstance of each case.'' *State* v.
*Crawford*, supra, 202 Conn. 451. In the present case,
however, the facts are undisputed, and the sole question
is whether the stipulated facts are sufficient to demon-
strate that the state fulfilled its burden of proving that
it executed the warrant with due diligence. Under these
circumstances, we review the trial court's reasonable-
ness conclusion de novo. See *Jones* v. *State*, 328 Conn.
84, 101, 177 A.3d 534 (2018) (observing that, ''when the
facts are undisputed, determining the legal import of
those facts presents a question of law subject to de
novo review''); *One Country, LLC* v. *Johnson*, 314 Conn.
288, 300, 101 A.3d 933 (2014) (''when the facts are undis-
puted,'' application of legal standard is ''a question of
law over which we exercise plenary review''); *Connecti-
cut Light & Power Co.* v. *Dept. of Public Utility Control*,
219 Conn. 51, 62, 591 A.2d 1231 (1991) (same); see also
*Nelson* v. *State Farm Mutual Automobile Ins. Co.*, 419
F.3d 1117, 1119 (10th Cir. 2005) (''[w]hether a court
properly applied a statute of limitations and the date a

State *v.* Freeman

statute of limitations accrues under undisputed facts are questions of law we review de novo''); *Spitsyn* v. *Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (''[i]f the facts underlying a claim for equitable tolling are undisputed, the question of whether the statute of limitations should be equitably tolled is . . . reviewed de novo'').

We begin our analysis with the relevant case law. In *State* v. *Crawford*, supra, 202 Conn. 443, this court held that the issuance of an arrest warrant within the limitation period set forth in General Statutes (Rev. to 1983) § 54-193 (b) commences a prosecution for purposes of satisfying the statute of limitations, so long as the warrant is executed without unreasonable delay. See id., 450–51. In *Crawford*, the state had issued a warrant for the arrest of the defendant, Ronald L. Crawford, approximately two months after the commission of the charged offenses, but the warrant was executed more than one year after the statute of limitations lapsed. Id., 445. Crawford filed a motion to dismiss the charges against him, arguing that, because he was not prosecuted within the one year limitation period, the prosecution was time barred. Id. We explained that, ''[w]hen an arrest warrant has been issued, and the prosecutorial official has promptly delivered it to a proper officer for service, he has done all he can under our existing law to initiate prosecution and to set in motion the machinery that will provide notice to the accused of the charges against him. When the prosecutorial authority has done everything possible within the period of limitation to evidence and effectuate an intent to prosecute, the statute of limitations is [satisfied].''[3] (Footnote omitted.)

---

[3] *Crawford* uses the word ''toll'' rather than ''satisfy,'' but we have since clarified that a distinction exists between ''tolling'' and ''satisfying'' the statute of limitations and that the latter term is the more accurate one in the present context. See *State* v. *A. B.*, supra, 341 Conn. 57 n.6 (noting that we previously have ''used the term 'tolled,' and other forms of the verb 'toll,' rather than 'satisfied,' to describe the state's meeting its obligation under § 54-193 (b) to have 'prosecuted' a crime within the relevant limitation period'' and concluding that '' 'satisfie[d]' is the appropriate term to describe the state's meeting such obligation under [the statute]'').

State *v.* Freeman

Id., 450. "We recognize[d], however, that some limit as to when an arrest warrant must be executed after its issuance is necessary in order to prevent the disadvantages to an accused attending stale prosecutions, a primary purpose of statutes of limitation[s]." Id. We therefore concluded that, "in order to [satisfy] the statute of limitations, an arrest warrant, when issued within the time limitations . . . must be executed without unreasonable delay." Id., 450–51.

We declined to "adopt a per se approach as to what period of time to execute an arrest warrant is reasonable." Id., 451. Instead, we clarified that "[a] reasonable period of time is a question of fact that will depend on the circumstances of each case. If the facts indicate that an accused consciously eluded the authorities, or for other reasons was difficult to apprehend, these factors will be considered in determining what time is reasonable. If, on the other hand, the accused did not relocate or take evasive action to avoid apprehension, *failure to execute an arrest warrant for even a short period of time might be unreasonable and fail to* [*satisfy*] *the statute of limitations.*" (Emphasis added.) Id.

In *State* v. *Swebilius*, supra, 325 Conn. 793, we considered whether a brief delay in the execution of an arrest warrant could be per se reasonable. The defendant, Jon Swebilius, was arrested thirty-two days after the issuance of the warrant for his arrest and thirteen days after the expiration of the applicable five year statute of limitations. Id., 796. Swebilius "moved to dismiss the charge on the ground that the prosecution was barred by the statute of limitations because . . . the delay in the execution of the warrant was unreasonable." Id. We concluded that the Appellate Court had "incorrectly determined that some delays in the execution of an arrest warrant may be so brief as to be reasonable as a matter of law for the purpose of [satisfying] the applicable statute of limitations." Id., 801.

State *v.* Freeman

We explained that, "once the defendant has demonstrated his availability for arrest, he has done all that is required to carry his burden; the burden then shifts to the state to demonstrate that any period of delay in executing the warrant was not unreasonable." Id., 804; see *State* v. *Woodtke*, 130 Conn. App. 734, 740, 25 A.3d 699 (2011). The "burden shifting scheme" required by *Swebilius* "encourages diligence by law enforcement officials in providing timely notice of charges to defendants." *State* v. *Swebilius*, supra, 325 Conn. 808. We "decline[d] to specify the precise actions that [law enforcement officials] must undertake to serve a warrant with due diligence, or the precise time line within which they must act," but held that "such officials must present some credible and persuasive factual basis for inaction when they fail to observe the statute of limitations. This requirement is consistent with the principle that, when a judicial doctrine, for all practical purposes, extends the statute [of limitations] beyond its stated term, that doctrine should be applied in only limited circumstances . . . ." (Internal quotation marks omitted.) Id., 808–809. We emphasized that such a rule "is not intended to impose an undue burden on the state"; id., 814; but to effectuate "the purposes of statutes of limitations," namely, "prevent[ing] the unexpected enforcement of stale and fraudulent claims" and "aid[ing] in the search for truth that may be impaired by the loss of evidence" due to the passage of time. (Internal quotation marks omitted.) Id., 812.

The burden imposed on the state is not onerous, but neither is it trivial. Although the dissent accurately observes that *Swebilius* (on a single occasion) referred to the requirement that the state "make *some effort* to serve the arrest warrant before the relevant statute of limitations expires"; (emphasis added) id., 814; *Swebilius* otherwise uniformly characterized the state's burden as requiring "*reasonable* efforts"; (emphasis added)

State *v.* Freeman

id., 815; or evidence of "due diligence . . . ." Id., 808; accord id., 804 n.8, 812. The dissent is correct that these standards are all "functionally equivalent"—but they are equivalent only if "some effort" is understood to require reasonable and diligent efforts. The dissent goes too far, and would empty *Swebilius* of its significance, by suggesting that a single reference in *Swebilius* to "some effort," in contrast to its more than one dozen references to "reasonable efforts" and "due diligence," means that the state satisfies its burden by making anything less than reasonable and diligent efforts. Indeed, that burden is no burden at all because it allows the state to satisfy the statute of limitations by ignoring it entirely, and simply to proceed with business while exhibiting no regard for, or even awareness of, the statutory deadline. That meaning is the opposite of what *Swebilius* intended when it stated that "a rule making some delays reasonable without any showing of *due diligence* is inconsistent with the purposes of the statutes of limitations." (Emphasis added.) *State* v. *Swebilius*, supra, 325 Conn. 812. We reaffirm that, once a defendant's availability for arrest is established, the state must demonstrate that it made diligent efforts to execute an arrest warrant within the limitation period or "offer some *evidence* explaining why its failure to do so was reasonable under the circumstances."[4] (Emphasis added.) Id., 814; see *State* v. *Ali*, 233 Conn. 403, 416, 660 A.2d 337 (1995) ("the issuance of an arrest

---

[4] The dissent states that "[t]he court in *Swebilius* required the state to provide an explanation only when it failed to make 'some' . . . effort . . . ." We disagree. As we explained in *Swebilius*, "[o]nce the defendant has presented evidence of his availability for arrest, it is reasonable and proper that the burden should then shift to the state *to explain why, notwithstanding the defendant's availability during the statutory period, the delay in his arrest was reasonable.* Doing so allocates burdens efficiently by requiring each party to bring forth evidence uniquely within its knowledge." (Emphasis added.) *State* v. *Swebilius*, supra, 325 Conn. 807. To read *Swebilius* as the dissent suggests is inconsistent with the plain language and clear import of our holding in that case.

State *v.* Freeman

warrant is sufficient 'prosecution' to satisfy the statute of limitations only if the warrant is executed with *due diligence*'' (emphasis added)); *State* v. *Crawford*, supra, 202 Conn. 452 (same).

In the present case, the parties do not dispute that the defendant fulfilled his burden of demonstrating his availability for arrest during the statutory period and, therefore, that the burden shifted to the state ''to present evidence of its due diligence in executing the warrant.'' *State* v. *Swebilius*, supra, 325 Conn. 803. We emphasize that the requirement of ''evidence'' to satisfy the state's burden under *Swebilius* must not be overlooked. ''Evidence'' in this context means what it normally means, namely, the formal presentation in a judicial proceeding of testimony, documents, or exhibits '' 'to prove or disprove the existence of an alleged fact . . . .' '' *Voris* v. *Middlesex Mutual Assurance Co.*, 297 Conn. 589, 602, 999 A.2d 741 (2010), quoting Black's Law Dictionary (9th Ed. 2009) p. 635. ''Fairly stated, evidence legally is the means by which alleged matters of fact are properly submitted to the trier of fact for the purpose of proving a fact in issue. On the other hand, 'proof' is the result or the effect of such 'evidence.' Moreover, [counsel's] representations [are] not 'testimony,' which, in turn, when given under oath or stipulated to, is a species of 'evidence.' '' *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 153–54, 496 A.2d 476 (1985); see *Federal National Mortgage Assn.* v. *Buhl*, 186 Conn. App. 743, 751, 201 A.3d 485 (2018) (''[u]nsworn 'representations of counsel are not, legally speaking, evidence' [on] which courts can rely''), cert. denied, 331 Conn. 906, 202 A.3d 1022 (2019); *Constantine* v. *Schneider*, 49 Conn. App. 378, 395, 715 A.2d 772 (1998) (same).

To fulfill its burden of proof regarding the delay in the execution of the warrant, the state was required to produce admissible *evidence* to explain the delay. This

State *v.* Freeman

proposition is not contested by the state. The unsworn factual representations of counsel, which cannot be tested in the crucible of cross-examination, are not evidence on which the state may rely to fulfill its burden of production and persuasion. Cf. *Texas Dept. of Community Affairs* v. *Burdine*, 450 U.S. 248, 255 n.9, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) (party bearing evidentiary burden of proof "cannot meet its burden merely through . . . argument of counsel"); *Pretzantzin* v. *Holder*, 736 F.3d 641, 651 (2d Cir. 2013) (government failed to fulfill burden of production because "the arguments of counsel are not evidence . . . and the [g]overnment failed to make any evidentiary proffer" (citation omitted)). This important precept derives from the recognition that "[s]tatements as to facts that have not been proven [or subject to cross-examination] amount to unsworn [and unchecked] testimony . . . ." (Internal quotation marks omitted.) *State* v. *Singh*, 259 Conn. 693, 717, 793 A.2d 226 (2002). Allowing assertions of counsel to serve as evidence, moreover, erases the elemental and crucial distinction between advocate and witness in our adversary system. See Rules of Professional Conduct 3.7 (prohibiting lawyer from testifying as witness except in certain circumstances not at issue in present case).

The question, then, is whether the stipulation of facts, arrest warrant application, and writ of habeas corpus constituted sufficient evidence to establish that the state acted with due diligence in executing the warrant such that the delay in the execution was not unreasonable. Although we have not defined the term "due diligence" in this context, we previously have observed that "[d]ue diligence does not require omniscience. Due diligence means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) *Skakel* v. *State*, 295 Conn. 447, 507, 991 A.2d 414 (2010); see *In re Samantha C.*, 268 Conn. 614, 632, 847 A.2d 883 (2004)

(in context of termination of parental rights, reasonable efforts to reunify family means "doing everything reasonable, not everything possible" (internal quotation marks omitted)). Due diligence does not require a party to do everything possible to attain its objective, but, at the same time, it requires something more than nonchalance. The state exercises due diligence, in short, if it undertakes efforts to execute a warrant "by persevering application . . . [made] in good earnest." (Internal quotation marks omitted.) *Skakel* v. *State*, supra, 507, quoting *Kubeck* v. *Foremost Foods Co.*, 190 Conn. 667, 672, 461 A.2d 1380 (1983).

We conclude that the evidence adduced by the state was insufficient to meet its burden of demonstrating that it exercised due diligence in its efforts to execute the warrant within the limitation period without unreasonable delay. The record reflects that the warrant was issued on November 15, 2018, but was not executed until three weeks later, on December 6, 2018, seven days after the expiration of the five year statute of limitations on November 29, 2018. The three week delay requires explanation in the form of *evidence* to establish that the delay was not unreasonable. Although the state prepared a writ of habeas corpus requesting the transportation of the defendant on November 21, 2018, eight days before the expiration of the limitation period, the writ was not signed by the prosecutor and the clerk of the court until six days later, on November 27, 2018. Additionally, the defendant was not transported to court, and the warrant was not executed, until December 6, 2018, nine days after the habeas writ was signed and seven days after the expiration of the limitation period. The stipulated facts do not reveal the reasons for these delays. Nor do they explain how the efforts undertaken to execute the warrant reflect due diligence by the state.

At the hearing on the defendant's motion to dismiss, the lack of evidence regarding these critical issues was

State *v.* Freeman

highlighted by the fact that the trial court found it necessary to ask the prosecutor to explain the reason for the delay in the execution of the warrant. The prosecutor cited state holidays, weekends, a "light" work day, and his own assessment of general logistical factors affecting the transportation of inmates, such as "certain limitations on the staff of [the] court with respect to how many inmates will be housed downstairs on any particular day" and "the involvement of other agencies, notably, the judicial marshals . . . ." According to the prosecutor, as "a matter of course and a matter of courtesy," the state does not "[make] a habit of requesting transport a day later, [or] two days later," but prefers to give "a little bit of lead time for the relevant agencies . . . to plan the transport . . . ." The prosecutor was unable to explain why, in this particular case, the state did not try to arrange for the transportation of the defendant before the expiration of the statute of limitations on November 29, 2018, but maintained that, in general, a delay of two to three weeks is "consistent with [his] office's practice . . . ." No evidence was presented to establish the facts underlying these assertions.

As we previously discussed, representations of counsel are not evidence. For this reason, we reject the suggestion in the concurring opinion that it may be permissible for a party to rely on the representations of counsel to satisfy their respective burdens under *Swebilius*. In *Swebilius*, we made it very clear that the representations of counsel, factual or otherwise, are insufficient. If a statute of limitations defense has been raised, the parties are under an obligation to adduce *evidence* regarding (1) the defendant's availability for arrest during the limitation period, and, if applicable, (2) the state's due diligence in executing the warrant. See *State* v. *Swebilius*, supra, 325 Conn. 803 ("once a defendant presents *evidence* of his availability for arrest

State *v.* Freeman

during the limitation period, the burden shifts to the state to present evidence of its due diligence'' (emphasis added)). We again emphasized the evidentiary nature of the requirement when we noted the near unanimous case law supporting the burden shift: ''We note that the cases since *Crawford* that have considered the distribution of burdens in relation to § 54-193 (b) have been nearly uniform in placing the burden on the state *to present evidence* of due diligence.'' (Emphasis added.) Id., 804 n.8. Indeed, we noted that, ''in cases involving relatively brief delays, *evidence* of [the state's] legitimate need to prioritize competing public safety responsibilities may well be sufficient to demonstrate compliance with the dictates of *Crawford*.'' (Emphasis added.) Id., 814. We even pointed out that the state's evidentiary burden was not onerous and could be satisfied by compiling publicly available governmental statistics. See id., 814–15 n.17. In sum, we are unaware of any case, in Connecticut or elsewhere, that permits a party to satisfy its burden of proof relating to a statute of limitations by relying on the representations of counsel.

Accordingly, the explanations offered by the prosecutor in response to the trial court's search for answers, while no doubt made in good faith, are insufficient to satisfy the state's burden under *Swebilius* to ''present some credible and persuasive factual basis for . . . [the state's] fail[ure] to observe the statute of limitations.''[5] Id., 808. Although the prosecutor presented the

[5] As this court recently explained in *A. B.*, ''[w]e have long held that the primary purpose of statutes of limitations is to encourag[e] law enforcement officials promptly to investigate suspected criminal activity . . . so as to ensure that a defendant receives notice, within a prescribed time, of the acts with which he is charged . . . .'' (Citation omitted; internal quotation marks omitted.) *State* v. *A. B.*, supra, 341 Conn. 68–69. ''Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity.'' (Internal quotation marks omitted.) Id., 56; see *State* v.

State *v.* Freeman

trial court with a stipulated chronology of events, he failed to provide *any* admissible evidence to explain the reasons for the delay in the execution of the warrant.[6] As a result of that evidentiary deficiency, the state failed to fulfill its burden of proving that the warrant was executed with due diligence, and the trial court improperly denied the defendant's motion to dismiss.

The dissent would dilute the requirements of *Swebilius*—and, in the process, the statute of limitations—to

---

*Crawford*, supra, 202 Conn. 450. Although the delay in the execution of the warrant in the present case was relatively brief, we previously have explained that even a brief delay beyond the expiration of the limitation period cannot be deemed "reasonable as a matter of law, solely on the basis of the length of the delay and irrespective of other facts." *State* v. *Swebilius*, supra, 325 Conn. 799 n.5.

[6] We reject the Appellate Court's determination that "it [was] within the purview of the trial court to use its knowledge of the inner workings of the courts and the process by which incarcerated persons are transported to a court in its determination of the reasonableness of the state's efforts." *State* v. *Freeman*, supra, 201 Conn. App. 568. There is no indication in the trial court's decision that it relied on its *own* knowledge of the inner workings of the courts and the process by which incarcerated persons are transported, rather than the prosecutor's factual representations. Stated another way, there is no indication that the state was excused from fulfilling its burden of proof because the trial court took judicial notice of these facts. See, e.g., *Jacobs* v. *Healey Ford-Subaru, Inc.*, 231 Conn. 707, 730 n.24, 652 A.2d 496 (1995) ("The doctrine of judicial notice excuses the party having the burden of establishing a fact from introducing formal proof of the fact. Judicial notice takes the place of proof." (Internal quotation marks omitted.)). Regardless, the inner workings of the courts and the process by which incarcerated persons are transported are "matters susceptible of explanation or contradiction," and, therefore, the defendant was "entitled to receive notice and have an opportunity to be heard" before the trial court took judicial notice of these facts on its own initiative. Conn. Code Evid. § 2-2 (b); see *Moore* v. *Moore*, 173 Conn. 120, 122, 376 A.2d 1085 (1977) (recognizing distinction "between matters susceptible of explanation or contradiction, of which notice should not be taken without giving the affected party an opportunity to be heard . . . and matters of established fact, the accuracy of which cannot be questioned, such as court files, which may be judicially noticed without affording a hearing" (citations omitted)). It is undisputed that, to the extent the trial court took judicial notice of these facts, it failed to provide the defendant with the requisite notice and opportunity to be heard.

State *v.* Freeman

require nothing more than "business as usual" without regard to the statutory deadline, and without regard to when the defendant was actually served with process. The dissent opines that the state satisfied its burden of demonstrating that its efforts to execute the arrest warrant were reasonable because, "before the statute of limitations expired, the state had undertaken all of the necessary preparatory steps for execution of the warrant . . . ." This observation begs the critical question under *Crawford* and *Swebilius*. That question is whether the "preparatory" steps taken by the state, if any, *were sufficient under the applicable legal standard* when the warrant was executed on a nonelusive defendant *after* the expiration of the limitation period. Under those circumstances, our precedent is very clear that the statute of limitations is satisfied only if the warrant is "executed with due diligence" such that there is not "unreasonable delay" between issuance and execution of the warrant. *State* v. *Crawford*, supra, 202 Conn. 451.[7] This burden, once again, obligates the state to demonstrate the reasonableness of the delay between issuance and execution of the warrant by presenting evidence that it sought to meet its obligations by making efforts demonstrating diligence, that is, something more than nonchalance, throughout that time period. For the reasons previously explained, we conclude that the state failed to fulfill this burden.[8]

[7] The dissent acknowledges that the inquiry focuses on the time period between issuance and execution of the warrant, which, in the present case, was from November 15 to December 6, 2018.

[8] The dissent misinterprets our holding in two respects when it states that we (1) determine that the state's delay in executing the warrant was unreasonable, and (2) effectively require that "the state . . . do everything possible to serve the warrant within the limitation period." Footnote 3 of the dissenting opinion. We intend to say nothing of the kind. Rather, we hold that the state failed to produce *evidence* that it undertook efforts to meet its obligation to execute the warrant without unreasonable delay. In undertaking those efforts, the state was not required to do everything possible to timely execute the warrant, but it was required by our law to make efforts indicating that it was acting in earnest to meet the statutory deadline. See *State* v. *Swebilius*, supra, 325 Conn. 814 (recognizing that "[t]he policies

State *v.* Freeman

Finally, we address the appropriate remedy. The state argues that, pursuant to *State* v. *Swebilius*, supra, 325 Conn. 815, the proper remedy is to reverse the judgment of the Appellate Court and to remand the case to the trial court so that the state is " 'afforded the opportunity to demonstrate that it made reasonable efforts to execute the warrant before the expiration of the statute of limitations or to explain why its failure to do so was reasonable under the circumstances.' " We disagree. In *Swebilius*, the proper remedy was to remand the case for further factual development because the trial court applied an incorrect legal standard when it determined that some delays in the execution of a warrant are sufficiently short that they may be deemed reasonable as a matter of law. The trial court's application of the wrong legal standard, combined with our articulation of the burden shifting framework for the first time in *Swebilius*, necessitated a remand so that the trial court could "evaluate the facts in light of [the] correct legal standard." *McDermott* v. *State*, 316 Conn. 601, 611, 113 A.3d 419 (2015). In contrast, in the present case, the trial court applied the correct legal standard, and "any

underlying statutes of limitations are best served when . . . the state has a strong incentive to ensure that a defendant is provided timely notice of charges"). In both regards, these are important distinctions. Finally, to the extent that the dissent suggests that the delay in the present case was somehow presumptively reasonable "[i]n light of the need for coordination among various agencies to temporarily transfer custody of the defendant from prison to the court," we reject the notion that we can presume anything of the kind without supporting evidence. It took the state from November 15 to December 6 to execute the warrant in this case. The record is devoid of evidence about the period of time that is, in fact, reasonably necessary to execute an arrest warrant on a defendant in custody under the circumstances as they existed. In the absence of such evidence, we are unwilling to speculate on that issue. Moreover, we consistently have declined to "adopt a per se approach as to what period of time to execute an arrest warrant is reasonable." *State* v. *Crawford*, supra, 202 Conn. 451; see *State* v. *Swebilius*, supra, 809 (rejecting state's claim that "some delays in the execution of an arrest warrant . . . are so brief as to require no justification on the part of the state").

State *v.* Freeman

insufficiency in proof was [not] caused by [a] subsequent change in the law" but, rather, by the state's "failure to muster evidence." (Internal quotation marks omitted.) Id. The state was well aware of its evidentiary burden under our precedent but nonetheless elected to offer no evidence other than an unadorned chronology of events. Under these circumstances, we can perceive no reason to provide the state with a second opportunity to meet that burden.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the trial court's judgment and to remand the case with direction to grant the defendant's motion to dismiss.

In this opinion McDONALD and D'AURIA, Js., concurred.

ROBINSON, C. J., concurring in the judgment. I concur in this court's judgment reversing the judgment of the Appellate Court, which affirmed the conviction of the defendant, Terry Freeman, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), following the entry of a conditional plea of nolo contendere. See *State* v. *Freeman*, 201 Conn. App. 555, 568, 242 A.3d 1059 (2020). I agree with the court's ultimate conclusion that the prosecution of the defendant was time barred by the five year statute of limitations set forth in General Statutes (Rev. to 2017) § 54-193 (b)[1] on the ground that the state failed to establish that the

---

[1] General Statutes (Rev. to 2017) § 54-193 (b) provides: "No person may be prosecuted for any offense, other than an offense set forth in subsection (a) of this section, for which the punishment is or may be imprisonment in excess of one year, except within five years next after the offense has been committed."

The statute was revised in 2019. See Public Acts 2019, No. 19-16, § 17. All references to the statute in this opinion are to the 2017 revision, unless otherwise noted.

State *v.* Freeman

warrant for the defendant's arrest was executed without unreasonable delay. I write separately because I respectfully disagree with those portions of the opinion announcing the judgment of the court[2] holding that the "evidence" of the "reasonable efforts to execute the arrest warrant" after the running of the statute of limitations that are required by this court's decisions in *State* v. *Swebilius*, 325 Conn. 793, 159 A.3d 1099 (2017), and *State* v. *Crawford*, 202 Conn. 443, 521 A.2d 1034 (1987), cannot be established by the factual representations of counsel. To the contrary, I conclude that the prosecutor's personal involvement in and familiarity with arranging the process by which the defendant would be transported to court from the Carl Robinson Correctional Institution for service of the warrant rendered the prosecutor's unchallenged factual representations an appropriate vehicle by which the state could establish "evidence" of its efforts to serve the warrant after the lapse of the statute of limitations. Because I nevertheless conclude that the facts established by those representations did not satisfy the state's obligation to make reasonable efforts to serve the arrest warrant following the lapse of the statute of limitations, I concur in the judgment of the court.

I note my agreement with the majority opinion's recitation of the facts, procedural history, and governing legal principles as set forth by, inter alia, *State* v. *Swebilius*, supra, 325 Conn. 793, and *State* v. *Crawford*, supra, 202 Conn. 443. Specifically, I agree that, "[w]hen an arrest warrant has been issued, and the prosecutorial official has promptly delivered it to a proper officer for service, he has done all he can under our existing law to initiate prosecution and to set in motion the machinery that will provide notice to the accused of the charges against him. When the prosecutorial authority has done

[2] Hereinafter, in the interest of simplicity, I refer to the opinion announcing the judgment of the court as the majority opinion.

State *v.* Freeman

everything possible within the period of limitation to
evidence and effectuate an intent to prosecute, the stat-
ute of limitations is [satisfied].'' (Footnote omitted.)
*State* v. *Crawford*, supra, 450; see *State* v. *A. B.*, 341
Conn. 47, 57 n.6, 266 A.3d 849 (2021) (explaining that
'' 'satisfie[d]' is the appropriate term to describe the
state's meeting such obligation under'' criminal statute
of limitations). There must, ''however, [be] some limit
as to when an arrest warrant must be executed after
its issuance . . . in order to prevent the disadvantages
to an accused attending stale prosecutions, a primary
purpose of statutes of limitation[s].'' *State* v. *Crawford*,
supra, 450. ''[I]n order to [satisfy] the statute of limita-
tions, an arrest warrant, when issued within the time
limitations . . . must be executed without unreason-
able delay.'' Id., 450–51.

In *Crawford*, this court declined to ''adopt a per se
approach as to what period of time to execute an arrest
warrant is reasonable.'' Id., 451. Instead, the court clari-
fied that ''[a] reasonable period of time is a question of
fact that will depend on the circumstances of each case.
If the facts indicate that an accused consciously eluded
the authorities, or for other reasons was difficult to
apprehend, these factors will be considered in determin-
ing what time is reasonable. If, on the other hand, the
accused did not relocate or take evasive action to avoid
apprehension, failure to execute an arrest warrant for
even a short period of time might be unreasonable and
fail to [satisfy] the statute of limitations.'' Id.

In *State* v. *Swebilius*, supra, 325 Conn. 793, we
recently held that even a very brief delay in the execu-
tion of an arrest warrant following the lapse of the
statute of limitations cannot ''be reasonable as a matter
of law . . . .'' Id., 801; see id., 809–10. We then clarified
the parties' respective obligations with respect to the
proof of a statute of limitations defense, observing that,
''once the defendant has demonstrated his availability

State *v.* Freeman

for arrest, he has done all that is required to carry his burden [of proving the statute of limitations defense]; the burden then shifts to the state to demonstrate that any period of delay in executing the warrant was not unreasonable.'' Id., 804; see id., 803 (discussing Appellate Court case law shifting burden ''to the state to present evidence of its due diligence in executing the warrant''). Requiring ''the state to explain why, notwithstanding the defendant's availability during the statutory period, the delay in his arrest was reasonable . . . allocates burdens efficiently by requiring each party to bring forth evidence uniquely within its knowledge.'' Id., 807; see id., 808 (''the state is in a far better position to determine what efforts were undertaken to ensure the defendant's prompt arrest'').

We emphasized in *Swebilius* that ''[t]his burden shifting scheme also encourages diligence by law enforcement officials in providing timely notice of charges to defendants. Although we decline[d] to specify the precise actions that they must undertake to serve a warrant with due diligence, or the precise timeline within which they must act, such officials must present some credible and persuasive factual basis for inaction when they fail to observe the statute of limitations. This requirement is consistent with the principle that, when a judicial doctrine, for all practical purposes, extends the statute [of limitations] beyond its stated term, that doctrine should be applied in only limited circumstances . . . . Accordingly, once a defendant has demonstrated his availability and nonelusiveness during the statutory period, the state must then demonstrate the reasonableness of any delay between the issuance and the service of an arrest warrant, at least when service occurs after the expiration of the limitation period.'' (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 808–809.

State *v.* Freeman

I agree with the majority opinion that, despite our reference in *Swebilius* requiring "that the state make *some effort* to serve the arrest warrant before the relevant statute of limitations expires . . . that opinion otherwise uniformly characterized the state's burden as requiring *reasonable* efforts . . . or evidence of due diligence . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) Thus, "reasonableness" and "due diligence" remain the touchstone in determining whether the state has demonstrated a "credible and persuasive factual basis" for its failure to serve the arrest warrant within the limitation period, and the reasonableness of the additional time needed beyond the expiration of that period. *State* v. *Swebilius*, supra, 325 Conn. 808. As *Swebilius* itself emphasized, this standard does not "impose an undue burden on the state. [The court in *Swebilius*] concluded merely that, if the defendant can demonstrate his availability during the statutory period, the state must make some effort to serve the arrest warrant before the relevant statute of limitations expires, or to offer some evidence explaining why its failure to do so was reasonable under the circumstances. Indeed, in cases involving relatively brief delays, evidence of a legitimate need to prioritize competing public safety responsibilities may well be sufficient to demonstrate compliance with the dictates of *Crawford*." Id., 814.

I part company from the conclusion in the majority opinion that a prosecutor's representations of fact to the court may not be used to satisfy the state's obligation under *Swebilius* to use "evidence" to prove the reasonableness of its efforts to serve the warrant, or the failure of those efforts. See id., 814–15. First, the majority's reading of the word "evidence" is inconsistent with its ordinary meaning, which is simply "something that furnishes proof" or "something legally submitted to a tribunal to ascertain the truth of a matter

State *v.* Freeman

. . . .'' Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) p. 402; see also American Heritage College Dictionary (4th Ed. 2007) p. 484 (defining ''evidence'' as ''[a] thing or things helpful in forming a conclusion or judgment'' or ''[t]he documentary or oral statements and the material objects admissible as testimony in a court of law''). The majority's restrictive reading of the word even goes beyond the more technical definition of the word set forth in Black's Law Dictionary, which defines ''evidence'' expansively as ''[s]omething (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact''; Black's Law Dictionary (11th Ed. 2019) p. 697; Black's specifically draws a distinction between evidence generally and ''admissible evidence.'' See id., pp. 697–98. Put differently, the majority opinion's reading of *Swebilius* adds the word ''admissible'' where it does not exist.

Second, the majority opinion's restrictive reading of the word ''evidence'' is in direct conflict with the well established ''practice that a trial court may rely [on] certain representations made to it by attorneys, who are officers of the court and bound to make truthful statements of fact or law to the court.'' (Internal quotation marks omitted.) *State* v. *Chambers*, 296 Conn. 397, 419, 994 A.2d 1248 (2010); see Rules of Professional Conduct 3.3 (a) (1) (duty of candor to tribunal). Particularly given the prosecutor's role as ''a high public officer'' and ''a minister of justice''; (internal quotation marks omitted) *State* v. *Courtney G.*, 339 Conn. 328, 341, 350 n.9, 260 A.3d 1152 (2021); accord Rules of Professional Conduct 3.8, commentary; I would not preclude our trial courts from relying on the statements of a prosecutor about events in which he or she played a personal role,[3] particularly when those factual repre-

_____

[3] The majority opinion accurately quotes this court's decision in *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 153–54, 496 A.2d 476 (1985), as providing: ''Fairly stated, evidence legally is the means by which alleged

State *v.* Freeman

sentations are, as the dissent correctly observes in the present case, entirely uncontested. See *State* v. *Chambers*, supra, 421–22; see also, e.g., *State* v. *Nguyen*, 253 Conn. 639, 658–60, 756 A.2d 833 (2000) (trial court was not required to conduct evidentiary hearing prior to barring witness' testimony as sanction for violation of sequestration order given "effectively uncontested" representations by prosecutor and defense counsel, and defendant's failure to request evidentiary hearing). Put differently, had the defendant desired to challenge the factual underpinnings of the prosecutor's explanation of the delays, he could have done so.

Having said that, the explanation offered by the prosecutor in this case does not convince me that the state's failure to serve the arrest warrant before the expiration of the statute of limitations on November 29, 2018, and the delay in service to December 6, 2018, were in fact reasonable, even though there were two state holidays during that period and interagency coordination was required to transport the defendant from the correctional facility to court.[4] I acknowledge the prosecutor's

matters of fact are properly submitted to the trier of fact for the purpose of proving a fact in issue. On the other hand, 'proof' is the result or the effect of such 'evidence.' Moreover, [counsel's] representations [are] not 'testimony,' which, in turn, when given under oath or stipulated to, is a species of 'evidence.' '' In my view, *Cologne* is distinguishable, notwithstanding its conclusion that the representations of the plaintiffs' attorney were a factually insufficient basis on which to hold the defendants in indirect civil contempt of court, because those representations did not concern events that the attorney herself had witnessed. See *Cologne* v. *Westfarms Associates*, supra, 153, 156. Indeed, this court's decision in *Cologne* contemplates permitting courts to rely on attorneys' factual representations concerning events in which they are personally involved—noting specifically that "the record is barren of any indication that the plaintiffs' counsel herself had directly observed the conduct of the defendant that was purported to constitute contempt." Id., 153.

[4] In addition to noting that the Thanksgiving holiday and weekend days fell in the period between the issuance of the warrant and the date on which the defendant was transferred to court to allow for execution of the warrant, the prosecutor explained: "So, it was reasonable because there are a number of factors that play in effectuating the transport of an inmate to this court

State *v.* Freeman

explanation that he would not ordinarily request imme-
diate transportation, as a "courtesy" to the various agen-
cies involved, such as the Department of Correction
and the judicial marshals, and his office's ordinary tim-
ing and practices with respect to the transportation of
inmates to court. Nevertheless, I remain unconvinced
that the state made the requisite reasonable efforts to
serve the warrant in a timely fashion, insofar as there
is no indication that the state attempted to expedite
the process to have the defendant transported sooner,
despite knowing of the impending expiration of the
statute of limitations. Although it may well be that expe-
diting the transportation of the defendant would in fact
have been unreasonable, given its ripple effect on other
judicial or law enforcement matters; cf. *State* v. *Swebi-*

here in Milford. It is not as simple as having the West Haven Police Depart-
ment take a ride up to Carl Robinson [Correctional Institution] and serve
the warrant because . . . if that warrant is served, [the defendant] would
have to be transported here to court the next day for his arraignment before
the court. So, it's not as logistically simple as just taking a ride up there
and serving the warrant.

"As Your Honor is aware, there are certain limitations on the staff of this
court with respect to how many inmates will be housed downstairs on any
particular day. I know that our office and our administrative staff, in making
requests for writs of habeas corpus, are mindful of dates . . . [that are]
already at capacity as far as prisoner transport. It also requires the involve-
ment of other agencies, notably the judicial marshals, to transport inmates
from . . . correctional facilities and—and, frankly, I think [as] a matter of
course and a matter of courtesy, we . . . haven't made a habit of requesting
transport a day later, two days later or a week later. I think typically it's a
date that kind of works with the calendar that has been set out as far as
how many inmates are being transported to court on a given day, and then
giving a little bit of lead time for the relevant agencies to . . . plan the
transport of the inmate to court. . . .

"[A]s to whether it was reasonable that it was done on December 6,
roughly two weeks after, maybe three weeks after the warrant had been
signed, and about two weeks after the habeas was requested, you know, I
think that's consistent with our office's practice and consistent with—with
our course of action, which is to [be] mindful that there are other people
involved in the system who have to act when we issue a writ of habeas
corpus, and giving the two week lead time is reasonable to allow all of
those various factors, the time to make preparations."

State *v.* Freeman

*lius*, supra, 325 Conn. 814; the current state of the record in this case leaves me entirely unable to arrive at that conclusion as a matter of law because the prosecutor's representations do not establish that expediting the transportation of the defendant to court would have resulted in anything more than potential inconvenience to the state actors involved. Because the state failed to carry its burden of proving the reasonableness of its failure to serve the arrest warrant on or before the date on which the statute of limitations expired, on November 29, 2018, I agree with the conclusion in the majority opinion that the robbery charge is time barred and should be dismissed on remand.

I join in the judgment of the court to reverse the judgment of the Appellate Court.

KELLER, J., with whom MULLINS and KAHN, Js., join, dissenting. I respectfully disagree with the majority's[1] conclusion that the Appellate Court erred in holding that the trial court correctly determined that the state had executed the arrest warrant for the defendant, Terry Freeman, without unreasonable delay and, therefore, properly denied the defendant's motion to dismiss the criminal charges against him in connection with a 2013 armed robbery. In determining that the delay was unreasonable, the majority effectively concludes that the state must not only obtain the arrest warrant but also execute the warrant before the statute of limitations has expired or offer evidence as to why it was not possible to have done so. Such a standard clearly exceeds what is required under our case law.[2]

[1] In the interest of simplicity, I refer to the opinion announcing the judgment as the majority opinion.

[2] I agree with the majority that de novo review is appropriate because we are considering stipulated facts on a cold record. See *Jones* v. *State*, 328 Conn. 84, 101, 177 A.3d 534 (2018) ("Ordinarily, when the facts are undisputed, determining the legal import of those facts presents a question of law subject to de novo review. . . . This is so even in the context of fact laden disputes ordinarily subject to a trial court's discretion." (Citations omitted.)).

State *v.* Freeman

Twenty-three days before the statute of limitations
expired on charges relating to the 2013 armed robbery,
the defendant provided a police detective with a confes-
sion to his participation in that cold case. The detective
timely prepared an arrest warrant, and, by the time the
judge signed the warrant, the statute of limitations was
due to expire in fourteen days. The following activities
ensued in those fourteen days: a police officer obtained
the signed warrant and submitted a request for an appli-
cation for a writ of habeas corpus to transport the
defendant to court for service of the warrant, the Office
of the State's Attorney prepared the application for the
writ, and the writ was signed by that office and by the
clerk of the court. Thus, before the statute of limitations
expired, the state had undertaken all of the necessary
preparatory steps for execution of the warrant under
the unusual circumstances of the case.

The majority concludes that these efforts were inade-
quate on their face to comply with the dictates of *State*
v. *Swebilius*, 325 Conn. 793, 159 A.3d 1099 (2017); con-
sequently, the state was required to provide evidence
to explain why it failed to do more. In particular, the
majority deems fatal the state's failure to provide evi-
dence to explain why the defendant could not have
been transported to the court for service of the warrant
before the statute of limitations expired. The standard
applied by the majority misapprehends the burden that
this court imposed on the state in *Swebilius*.

To understand this court's intention in that case, it
is important to focus on the specific context in which
this issue came before the court. It had long been estab-
lished that, in Connecticut, "the issuance of an arrest
warrant is sufficient 'prosecution' to satisfy the statute
of limitations only if the warrant is executed with due
diligence." *State* v. *Ali*, 233 Conn. 403, 416, 660 A.2d
337 (1995). The court in *Swebilius* addressed the ques-
tion of whether the state can be deemed to have acted

State *v.* Freeman

with due diligence, as a matter of law, when *no* effort
was made to execute the warrant during the limitation
period, if the warrant was executed within a sufficiently
brief period after the limitation period expired. *State*
v. *Swebilius*, supra, 325 Conn. 798–800. In *Swebilius*,
the arrest warrant was executed thirteen days after the
limitation period expired when the defendant volunta-
rily surrendered to the police after learning that the
warrant had been issued. Id., 797. This court rejected the
notion that any brief period of delay could be presumed
reasonable as a matter of law. Id., 801.

Before articulating the state's burden, this court
noted its "agree[ment] with the drafters of . . . the
Model Penal Code that [i]t is undesirable . . . to toll
the statute of limitations in instances [in which] the
warrant is issued but *no* effort is made to arrest a
defendant whose whereabouts are known."[3] (Emphasis
added; footnote omitted; internal quotation marks omit-
ted.) Id., 814. To strike the proper balance of a rule that
would discourage such inaction without imposing an
"undue burden" on the state; id., 814; this court articu-
lated the following standard: "[I]f the defendant can
demonstrate his availability during the statutory period,
the state must make *some* effort to serve the arrest
warrant before the relevant statute of limitations
expires, or to offer some evidence explaining why its
failure to do so was reasonable under the circum-
stances." (Emphasis added.) Id. "Some" effort, then,
was in contraposition to "no" effort. See id., 808 ("such
officials must present some credible and persuasive

---

[3] Much of the court's analysis in *Swebilius* rested on *State* v. *Crawford*,
202 Conn. 443, 521 A.2d 1034 (1987), a case in which there similarly was
no evidence that the state had made *any* effort to execute the arrest warrant
before the limitation period expired. See *State* v. *Swebilius*, supra, 325 Conn.
801–802 (noting that, in *Crawford*, "this court was asked to determine
whether the mere issuance of an arrest warrant within the limitation period
was sufficient to commence a prosecution for purposes of [General Statutes]
§ 54-193, thereby tolling the limitation period").

State *v.* Freeman

factual basis for *inaction* when they fail to observe the statute of limitations'' (emphasis added)). The court emphasized the modest nature of the burden in other ways. It noted that, ''in cases involving relatively brief delays, evidence of a legitimate need to prioritize competing public safety responsibilities may well be sufficient to demonstrate [that the warrant was executed without unreasonable delay].'' Id., 814; see also id., 814 n.17. This example further signaled that the state was not required to go to extraordinary lengths or to upend other important obligations to demonstrate due diligence.

Instead of considering whether the state made ''some effort'' to execute the warrant, a burden that the state plainly satisfied, the majority seizes on the court's subsequent reference in *Swebilius* to ''reasonable efforts . . . .'' Id., 815. It then ascribes a meaning to that term that effectively equates to ''best efforts'' (i.e., ''*every* reasonable effort''), which far exceeds ''some effort.'' Insofar as the majority concludes that the state was required to explain why it could not have executed the warrant within the limitation period, it appears to require the state to present additional evidence to explain why it did not do everything *possible* to accomplish that end, a far cry from ''some effort.''[4] As the Kansas Court of Appeals explained in a case favorably cited by this court in *State* v. *Swebilius*, supra, 811 n.13, ''[w]hen determining the reasonableness of a delay in the execution of an arrest warrant, it is key to look at what the [s]tate did do, *not what it did not do*.'' (Emphasis added.) *State* v. *Divers*, Docket No. 106,312, 2012

---

[4] The majority denies that it is effectively requiring the state to do everything possible to serve the warrant within the limitation period. Although the majority's determination that the state is required to provide evidence to explain why it did not execute the warrant within the limitation period leaves the door open for some explanation short of impossibility to suffice, the state cannot have confidence that any effort short of everything that is possible will be deemed ''reasonable'' under the majority's view.

State *v.* Freeman

WL 4794603, *3 (Kan. App. October 5, 2012) (decision without published opinion, 286 P.3d 239), review denied, Kansas Supreme Court, Docket No. 11-106312-A (June 14, 2013); see *State* v. *Long*, 276 Kan. 297, 300, 75 P.3d 1217 (2003) ("the reasonableness of the delay in executing the warrant cannot be measured by what the [s]tate could have or should have done"); see also *In re Samantha C.*, 268 Conn. 614, 632, 847 A.2d 883 (2004) (stating, in context of case involving constitutional rights, that "[r]easonable efforts means doing everything reasonable, not everything possible" (internal quotation marks omitted)).

Only four sentences stand between the court's references in *Swebilius* to "some effort" and "reasonable efforts . . . ." *State* v. *Swebilius*, supra, 325 Conn. 814–15. This proximity clearly indicates that the court viewed these standards to be functionally equivalent.[5] Those terms can easily be reconciled if "reasonable" was simply intended to make clear that "some" effort is not satisfied by any effort no matter how inconsequential or ineffective to accomplish the intended goal. See id., 811 n.13 (favorably citing approach in *State* v. *Gauthier*, Superior Court, judicial district of New Haven, Docket No. N23N-MV-11-0074499-S (September 11, 2012), in which delay of "forty-nine days after statute of limitations expired was not unreasonable because officers 'maintained diligent attention to [the] case' and attempted to serve warrant as soon as officer was aware it had been signed," despite one month lapse between efforts to see whether warrant had been signed). To the extent that the majority implies that the standard as I have interpreted it would be satisfied by efforts amounting to "nonchalance" or less, it is clearly mistaken.

_____
[5] The court in *Swebilius* used "some effort" when articulating the general standard; *State* v. *Swebilius*, supra, 325 Conn. 814; and "reasonable efforts" when referring to the state's burden on remand. Id., 815.

State *v.* Freeman

Another problem with the majority's analysis is that it appears to require the state to provide an explanation whenever it fails to execute the warrant within the limitation period. For example, it would not be good enough for the state to establish that it attempted to execute the warrant where the defendant was believed to reside; it would be required to explain why service could not be effectuated at that time and why further efforts could not have been made to successfully execute the warrant within the limitation period. The court in *Swebilius* only required the state to provide an explanation when it failed to make "some" (i.e., "reasonable") effort within the limitation period. *State* v. *Swebilius*, supra, 325 Conn. 814.

When assessed against that standard, it is clear that the state made reasonable efforts to execute the warrant before the statute of limitations expired. As I previously noted, the state undertook all of the necessary preparatory steps for execution of the warrant before the limitation period expired.

The only question that remains is whether execution of the warrant seven days after the statute of limitations expired (five days if one does not count weekend days, when the court was not open) was "without unreasonable delay."[6] *State* v. *Crawford*, 202 Conn. 443, 451, 521 A.2d 1034 (1987). The majority overlooks the signifi-

---

[6] Whether the delay is unreasonable is assessed in relation to the period between the issuance of the arrest warrant and its execution. See *State* v. *Swebilius*, supra, 325 Conn. 809 ("the state must . . . demonstrate the reasonableness of any delay between the issuance and the service of an arrest warrant") Thus, for example, if the state had made some effort to serve the warrant long before the statute of limitations expired and then did nothing else of consequence before that period expired, we would consider the entire period between issuance and execution, including that period of inaction, in assessing whether the delay in execution was unreasonable. In the present case, I focus on the delay following the expiration of the statute of limitations because I conclude that the state made sufficient efforts to execute the warrant during the limitation period.

State *v.* Freeman

cance of the fact that the present case is atypical. In
the usual case, "[w]hen an arrest warrant has been
issued, and the prosecutorial official has promptly deliv-
ered it to a proper officer for service, he has done all
he can under our existing law to initiate prosecution
and to set in motion the machinery that will provide
notice to the accused of the charges against him." Id.,
450. In the present case, the defendant was in the cus-
tody and control of the Commissioner of Correction
when the arrest warrant was issued. The defendant
was a convicted felon with four years of his sentence
remaining. Even without taking the prosecutor's expla-
nation into account,[7] the evidence submitted reflects

_____

[7] In addition to noting that the Thanksgiving holiday and weekend days
fell in the period between the issuance of the warrant and the date on which
the defendant was transferred to the court to allow for execution of the
warrant, the prosecutor explained: "So, it was reasonable because there are
a number of factors that play in effectuating the transport of an inmate to
this court here in Milford. It is not as simple as having the West Haven
Police Department take a ride up to Carl Robinson [Correctional Institution]
and serve the warrant because, of course, then, if that warrant is served,
[the defendant] would have to be transported here to court the next day
for his arraignment before the court. So, it's not as logistically simple as
just taking a ride up there and serving the warrant.

"As Your Honor is aware, there are certain limitations on the staff of this
court with respect to how many inmates will be housed downstairs on any
particular day. I know that our office and our administrative staff in making
requests for writs of habeas corpus are mindful of dates in which . . . [we
are] already at capacity as far as prisoner transport. It also requires the
involvement of other agencies, notably the judicial marshals, to transport
inmates from . . . correctional facilities . . . and, frankly, I think [as] a
matter of course and a matter of courtesy, we . . . haven't made a habit
of requesting transport a day later, two days later or a week later. I think
typically it's a date that kind of works with the calendar that has been set
out as far as how many inmates are being transported to court on a given
day, and then giving a little bit of lead time for the relevant agencies to
. . . plan the transport of the inmate to court. . . .

"[A]s to whether it was reasonable that it was done on December 6,
roughly two weeks after, maybe three weeks after the warrant had been
signed, and about two weeks after the habeas [writ] was requested, you
know, I think that's consistent with our office's practice and consistent . . .
with our course of action, which is to [be] mindful that there are other
people involved in the system who have to act when we issue a writ of
habeas corpus, and giving the two week lead time is reasonable to allow
all of those various factors the time to make preparations."

State *v.* Freeman

that the procedures undertaken to execute the warrant required the cooperation of the Department of Correction, judicial marshals, and a court liaison officer for the New Haven Police Department. In light of the need for coordination among various agencies to temporarily transfer custody of the defendant from prison to the court and to execute the warrant in a manner consistent with procedures to maintain control over the defendant and to protect public safety, I would conclude that execution of the warrant five (or seven) days after the limitation period expired under such circumstances was without unreasonable delay.[8]

I note that this contextual explanation of the myriad specific considerations that were factors in the present case is a far cry from the type of generic excuse that this court deemed inadequate in *Swebilius*. See *State* v. *Swebilius*, supra, 325 Conn. 814–15 n.17 (noting that properly contextualized statistics demonstrating competing demands on police department could provide evidence of reasonableness of delay, whereas "[t]he mere fact that a police department is a very busy urban police department is not enough for it to avoid its obligation to serve the warrants in a timely manner" (internal quotation marks omitted)). Contrary to the majority, I see nothing inherently unreasonable about a prosecutor's adhering to procedures put into place to accommodate coordination among the various agencies involved in the transportation of an inmate, such that further explanation is required under the present circumstances.

[8] In light of my conclusion that the state's efforts within the limitation period were reasonable, I need not consider the majority's determination that "admissible evidence" was required to explain the purported inadequacy of those efforts and, thus, that the trial court could not consider the prosecutor's representations to the trial court, which were made in response to the court's direct questions. This court has permitted trial courts to rely on such representations with respect to matters of similar import when there is no objection to the veracity or accuracy of the statements, no request for an evidentiary hearing on the matter, and no statute or court rule requiring such an evidentiary hearing. See, e.g., *Maio* v. *New Haven*, 326 Conn. 708, 729, 167 A.3d 338 (2017); *In re Natalie S.*, 325 Conn. 849, 857–58, 163 A.3d 1189 (2017); *State* v. *Lopez*, 239 Conn. 56, 79, 681 A.2d 950 (1996); *State* v. *Haye*, 214 Conn. 476, 482–83, 572 A.2d 974 (1990). Even if, however, the majority were correct that "admissible evidence" is required and that a prosecutor's statements to the trial court are not admissible evidence, under well settled principles, the defendant's failure to object when the court solicited explanations from the prosecutor would constitute a waiver of any nonconstitutional claim that the statements were inadmissible evidence. See, e.g., *Pereira* v. *State Board of Education*, 304 Conn. 1, 46 n.33, 37 A.3d 625 (2012) ("[i]t is well established that [during trial] a party that fails to

The majority perceives unjustifiable nonchalance on the part of the state; I see sufficient evidence of due diligence in the brief period of time between the date the warrant was issued and the date it was executed.

Accordingly, I respectfully dissent.

———————————————